## O'BRIEN et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. June 2, 1924.)

No. 6439.

1. Criminal law ⬤⇒622(1)—Severance as to joint defendants discretionary.

Where defendants are indicted jointly for the same offense, refusal of severance and their trial together is within the discretion of the court.

2. Criminal law ⬤⇒622(1)—Witnesses ⬤⇒ 52(7)—Wife may be competent witness for a codefendant of her husband, and severance permissible to render her available.

Where separate defenses are interposed by defendants jointly indicted, and there may be a separate conviction or acquittal of each, the wife of one is a competent witness for the other, and if necessary to enable him to avail himself of such testimony he is entitled to a severance.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Criminal law ⊚⟳552(1)—Evidence held insufficient to connect one defendant with crime committed by another.**

Evidence which at most showed only that a defendant associated with one who was convicted of the crime, and that he had knowledge that a crime was to be, or had been, committed, *held* insufficient to sustain his conviction.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Orie L. Phillips, Judge.

Criminal prosecution by the United States against Jack O'Brien and Carl Wilder. Judgment of conviction, and defendants bring error. Reversed as to O'Brien, and affirmed as to Wilder.

A. C. Seawel and W. J. Crump, of Musgokee, Okl., for plaintiffs in error.

Frank Lee, U. S. Atty., of Muskogee, Okl.

Before LEWIS, Circuit Judge, and BOOTH and SYMES, District Judges.

SYMES, District Judge. Plaintiffs in error, Jack O'Brien and Carl Wilder, were jointly tried and convicted on both counts of an indictment, the first charging a burglary of a building in which a United States post office was located, and the second larceny of United States funds from the post office. Charles Foy, also named in the indictment, but not tried, and one Gibbons, are alleged to have been implicated also.

[1] At the opening of the trial the defendants separately moved a severance, which was denied, and this constitutes the first assignment of error. The defendants were indicted jointly for the same act, and it was within the discretion of the court to try them together. Talbot v. U. S., 208 Fed. 144, 125 C. C. A. 360, and cases cited. That this discretion was not abused is shown later.

The second proposition urged by plaintiff in error is that the court erred in allowing the witness George Hill, post office inspector, to relate conversations he had with the defendant Wilder. The objection is based on the assumption that Wilder refused to talk, and that the court allowed the jury to draw a wrong inference from the fact that he remained silent. Counsel has misread the evidence, for Wilder did talk to Hill, and discussed everything except the robbery.

Error is assigned on an alleged ruling of the court refusing to allow the wife of O'Brien to testify on behalf of Wilder. The colloquy that took place between court and counsel shows that the court offered to allow Mrs. O'Brien to testify to facts that would constitute a separate defense for Wilder. But the defendant did not call her, so the alleged error is not squarely before us.

Taking up the question on its merits, however, Mrs. O'Brien would undoubtedly have been a competent witness in behalf of Wilder, if separately tried; and, if the facts counsel offered to prove by Mrs. O'Brien were competent and material, there would be a very serious question as to whether prejudicial error was not committed in refusing Wilder a separate trial. It is alleged that Mrs. O'Brien would have testified that she was present, part of the time, at least, when Wilder, O'Brien,

⊚⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and the others were at their house at the time the alleged conversation took place, to the effect that they were going to break into some safe, and some of them said it "would be pretty easy blowed," etc., and that she would testify that no such conversation took place. The government did not claim, however, that Wilder made any statements during this conversation. He was not implicated otherwise than by being present. So the evidence that Mrs. O'Brien would have refuted was required to make a case against O'Brien only, and she was not a competent witness in his behalf. There was other testimony amply sufficient to justify the jury in finding Wilder guilty. So the ruling of the lower court was correct.

[2] It is urged that a wife is not a competent witness for a codefendant tried with her husband, and Talbot v. U. S., 208 Fed. 144, 125 C. C. A. 360, is cited as authority. This statement, standing unqualified, is too sweeping, and the authorities there cited to support it do not so hold. The rule is different in a case where separate defenses are interposed, and there can be a separate acquittal or conviction of each defendant. See Greenleaf on Evidence (14th Ed.) § 334–5; Wharton's Criminal Evidence (10th Ed.) vol. 1, §§ 391, 392; Wigmore on Evidence (2d Ed.) vol. 4, §§ 2234–2237, inclusive; and Underhill's Criminal Evidence, § 306. It would seem on principle that a defendant would be entitled, upon timely motion and proper showing, to a severance in order to have the benefit of such testimony, if it is otherwise material.

[3] The seventh and last assignment of error asserts that the verdict of the jury was contrary to the evidence, and not sustained by sufficient evidence. A careful reading of the record convinces us that as to O'Brien this assignment is well taken. The testimony of the government first established the crime charged, and that it was committed on the night of June 7 or 8, 1922, at Peggs, Okl., by three men who were seen by witnesses from a building directly across the street. They were not recognized, however.

There is some evidence as to Wilder, Gibbons, and Foy being seen at nearby places before and after the robbery. Their descriptions as given by these witnesses, however, are not satisfactory, and all say that O'Brien was not with them. The government also proved that a certain Ford car was stolen two days before the robbery, traced to Peggs, then to Tahlequah, back to Peggs, and was later found destroyed. Tahlequah is 18 miles from Peggs.

The first evidence in the record that concerns O'Brien is that of a Mr. Nelson. He says Gibbons and O'Brien called at his place late in the afternoon of June 7th in the Ford car in question, and that Gibbons tried to sell it to him; that O'Brien disclaimed any interest in the car, and stated he knew nothing about his companions; that Gibbons, Wilder, and Foy, without O'Brien, returned the next evening about 8:30 and renewed negotiations for a sale.

Next is the testimony of Frank Smart, a resident of Tahlequah. Smart and O'Brien occupied separate rooms in the same house in Tahlequah. He says: That on June 6th Wilder, Foy, and Gibbons, and a party named Melton were all in the part of the house occupied by O'Brien; that they were there again on the afternoon of the 8th,

and from an adjoining room he overheard them "talking about getting into some place; couldn't understand just what at the present time." Then they all left, and returned about two hours later, on which occasion he overheard some conversation to the effect that some place would be easy to get into, and that a safe "would be easy blowed." Later one of their number came up in a Ford car, and all, including O'Brien, left about 6:30; that O'Brien returned shortly after and went to bed; that Melton came in about 3 or 4 o'clock in the morning, and they had a conversation, in which O'Brien asked him how they made it, and he replied, "All right, except it took the third shot." They also discussed cars and cutting telephone lines, etc. He was in bed at the time, and did not see O'Brien. It further appears that Smart, who was a taxi driver, was out on bond on a charge of bootlegging.

Smart's wife testified that she was also at home on the night of the 8th, but she does not corroborate her husband's testimony in all respects.

This is the evidence on which O'Brien was convicted. It consists only of the statements of Frank Smart as above, and only proves at the best that O'Brien knew that some crime was to be or had been committed. There is no direct evidence against him, and the most that can be said is that he associated with Wilder, who was convicted on evidence satisfactory, but wholly circumstantial. The presumption of innocence in his favor is not overcome, in the absence of other proof connecting him with the crime, by the fact that he was often seen with one who committed the offense, or knew it was to be committed, or was a spectator thereof. 16 C. J. 535, 546, 674.

The judgment as to Wilder is affirmed.

The judgment as to O'Brien is reversed, and a new trial ordered.