**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Maurice De Lawrence FRAZIER and
Frankie Chiles, Defendants-
Appellants.**

Nos. 162–70, 163–70.

United States Court of Appeals,
Tenth Circuit.

Dec. 9, 1970.

William R. Burkett, U. S. Atty. (John O. Sparks, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Carroll Samara, Oklahoma City, Okl., for defendant-appellant Maurice De Lawence Frazier.

Henry F. Featherly, Oklahoma City, Okl., for defendant-appellant Frankie Chiles.

Before LEWIS, Chief Judge, McWILLIAMS, Circuit Judge, and BRATTON, District Judge.

McWILLIAMS, Circuit Judge.

Frazier and Chiles, the appellants, were jointly tried and convicted by a jury on each count of a three count information charging the possession and sale of a narcotic drug, heroin hydrochloride, an opium derivative narcotic drug. 26 U.S.C. § 4704(a), 26 U.S.C. § 4705(a), and 21 U.S.C. § 174. Each now seeks reversal of his respective conviction on the same ground, namely, the alleged insufficiency of the evidence. In our view of the matter there is ample evidence to support the several verdicts of the jury and the judgments entered thereon should therefore be affirmed.

The sale which formed the factual basis for the prosecution was made to a government informer, one Eddie Joe Edrington. Upon trial Edrington testified that he was telephonically contacted by one Troy Beck concerning a possible sale by the latter to the former of some heroin. Edrington immediately contacted an agent of the Federal Bureau of Narcotics and Dangerous Drugs. The agent went at once to Edrington's home and arrangements were then made for the consummation of Beck's offer to sell. Edrington called Beck and the latter agreed to deliver the narcotics to Edrington's home at seven-thirty in the evening. Edrington was then thoroughly searched by the federal agent and given $250 in currency, the agent keeping a list of the serial numbers of the currency given. About 7:30 P.M. a vehicle was driven up in front of Edrington's home and upon a honk of the horn Edrington went to the car, which was parked on the "wrong" side of the street.

Edrington testified that he got in the car and sat on the left-hand side of the rear seat. According to Edrington, Beck was driving the vehicle; Chiles was seated on the right-hand side of the front seat; and Frazier was seated beside him on the rear seat. Edrington stated that though he was best acquainted with Beck, he had known Frazier for

about nine months and that he had seen Chiles on several previous occasions. Edrington made positive in court identification of both Chiles and Frazier. (Beck had previously pled guilty to the indictment.)

It was in this setting, then, according to Edrington, that Chiles, on command of Beck, reached back over the front seat and delivered a cellophane package to Edrington. The package contained heroin, according to another government witness, one Tipton, a chemist. Also on the direction of Beck, Edrington counted out the $250 and gave it to Frazier.

The agent for the narcotics bureau testified as to his search of Edrington, the delivery of the $250 to Edrington, and what he saw from Edrington's front room while Edrington was in the Beck car. In this regard the agent testified that he recognized two of the occupants of the car as being Beck and Frazier, but that because his view was partially blocked he could not identify the person seated on the left far side of the front seat. However, according to the agent, he did notice Edrington receive something "from the man sitting next to Beck."

A narcotic agent for the State of Oklahoma testified that he was alerted a couple of hours before the sale and that he and another conducted a stake out of the motel where Beck was staying. This witness testified that through binoculars he noticed Beck and two others leave the motel and get into an automobile which he and his companion then followed to the Edrington residence. This witness identified Frazier, whom he had known for ten years, and Chiles, whom he had never seen before, as being occupants of the car. This witness had the Beck car under scrutiny through his binoculars during the time Edrington was in the vehicle and he stated that he saw Chiles "put his hand to the back seat."

No arrests were made at the time of the alleged offense, the investigation being what was described by one witness as a "continuing one," and Frazier and Chiles were in fact not arrested till about four months later, when indictments were returned. Upon trial both Frazier and Chiles elected to testify and each denied that he was in the car on the occasion testified to by the prosecution witnesses.

The foregoing recital of the evidence has perhaps been overextended for the obvious purpose of demonstrating that the evidence tying Frazier and Chiles into the transaction under consideration is strong and convincing and amply sufficient to support the several verdicts of the jury. In this regard the main thrust of appellants' argument is that Edrington, being an informer and a user himself of narcotic drugs, is unreliable and his testimony not worthy of belief. Such being the case, argue the appellants, the convictions should be reversed, particularly in view of the fact that Edrington's testimony is said to be uncorroborated. The question of the weight to be given Edrington's testimony was of course for the jury to decide and, contrary to the assertion of counsel, Edrington's testimony was supported by considerable corroborating testimony. In short, the evidence supports the verdicts.

O'Brien v. United States, 299 F. 568 (8th Cir.) relied on by Frazier, is in our view inapplicable. There, a burglary conviction was reversed because the only evidence tying O'Brien into the burglary was his "association" with another who was convicted of the burglary. In that case it was stated that the presumption of innocence was not overcome by the fact that O'Brien "was often seen with one who committed the offense, or [that he] knew it was to be committed, or was a spectator thereof." Frazier and Chiles were not mere spectators, but on the contrary, according to the prosecution witnesses, each played an active role in the sale of the heroin.

Chiles urges upon us Williamson v. United States, 311 F.2d 441 (5th Cir.). It is true that in that case a conviction for unlawful possession of whiskey in unstamped containers was reversed because of the rather unusual circumstances surrounding the hiring of an inform-

er on a "contingent fee" basis. Also present in that case was an overtone of entrapment. Suffice it to say the factual situation in the instant case is far different from that of Williamson.

In McGee v. United States, 402 F.2d 434 (10th Cir.), we stated:

"In passing upon the sufficiency of the evidence to support a conviction, the evidence, together with all reasonable inferences that can be drawn therefrom, will be viewed in the light most favorable to the prosecution. When it is demonstrated that, viewing the evidence in this context, there was sufficient evidence on each element of the offense from which the jury could find the accused guilty beyond a reasonable doubt, the conviction will be sustained."

The evidence in the instant case fully meets the requirements of McGee.

Affirmed.