**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Ray PLEMONS, Defendant-
Appellant.**

**No. 71–1161.**

United States Court of Appeals,
Tenth Circuit.

Feb. 9, 1972.

Ruth C. Streeter, Asst. U. S. Atty., (Victor R. Ortega, U. S. Atty., on brief), for plaintiff-appellee.

James Sidwell, Albuquerque, N. M., for defendant-appellant.

Before HAMLEY *, SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

William Ray Plemons, Tim Whitecotton, and Jimmy Mead were charged with a violation of the federal bank robbery statute. 18 U.S.C. § 2113(a) and (b). Whitecotton and Mead pleaded guilty and Plemons stood trial. Upon trial Plemons was found guilty by a jury and he now appeals from the sentence imposed. A brief review of the evidence adduced upon trial will place the issues in focus.

Tim Whitecotton testified in behalf of the Government and the gist of his testimony was that, at gunpoint, he and Mead held up the officials of a savings and loan association in Albuquerque, New Mexico, and escaped with some $1,300 in currency. According to Whitecotton, Plemons helped plan the robbery and participated therein by driving the getaway car and sharing in the loot.

An FBI agent testified that he questioned Plemons one day after his arrest, Plemons and Whitecotton having been arrested by local police in Oklahoma three days after the robbery. The agent further testified that on this occasion Plemons admitted that he purchased a gun which had been used in the robbery by his half brother, Mead; that he (Plemons) had driven the getaway car; and that he shared equally in the loot.

In the course of the robbery Whitecotton and Mead produced a briefcase and demanded that the currency be placed therein. The bank officials did as ordered, but also managed to slip a small tear gas bomb into the briefcase along with the currency, part of the latter being so-called "bait money." In his statement to the FBI agent, Plemons volunteered that some few blocks from the robbery scene the tear gas bomb detonated with nearly disastrous results. Additionally, a marked twenty dollar bill found on Plemons' person was identified as having been stolen in the robbery.

Plemons' testimony was to the effect that he had nothing to do with the robbery; that he initially confessed to the FBI agent to avoid prosecution in Texas, but that he later repudiated his confession; that though he was with Whitecotton and Mead both a few days before, as well as after, the robbery, he had "cut-out" on his own for several days and did not in any manner participate in the crime.

Counsel frames the issues presented on review as follows: (1) Did the trial court err in denying Plemons' request for the issuance of a writ of habeas cor-

---

* Of the Ninth Circuit, sitting by designation.

pus ad testificandum to one William Cary Edwards; (2) did the jury err in giving credence to the testimony of Tim Whitecotton; and, (3) did the trial court err in giving an instruction relative to possession of recently stolen property? In our view no error was committed and we affirm.

## I.

Prior to trial, Plemons requested the trial court to enter an order that three prisoners in the United States Penitentiary at Leavenworth, Kansas, be transferred to Albuquerque, New Mexico, to the end that upon trial he could call them as his witnesses. One of those whose presence was thus requested was Jimmy Mead, who had previously pleaded guilty to the charge for which Plemons was about to go on trial. The trial court granted this request and upon trial Mead did testify in Plemons' behalf, stating that he and Whitecotton robbed the savings and loan association but that it was an unnamed third party —not Plemons—who drove the getaway car.

The other two prisoners whose presence Plemons sought were George Knight and William Edwards. These two witnesses were said to be able to offer testimony which would tend to impeach the testimony of Tim Whitecotton who, as previously indicated, had pleaded guilty to the robbery in question, and was later endorsed as a witness for the Government. The trial court indicated a concern about the security problems posed by bringing three long-term prisoners from the federal penitentiary in Leavenworth to Albuquerque. In any event, with the approval of counsel, the trial court designated an investigator from the Kansas City area to go to the penitentiary at Leavenworth and interview Knight and Edwards. A report of these interviews was later made available to defense counsel and the trial court, but not to the Government.

It was in this setting that the trial court determined that the testimony of Knight and Edwards would be cumulative and that under such circumstance Plemons could subpoena one, but not both. Plemons then decided to subpoena Knight. However, he now contends that the trial court erred in denying his request that Edwards also be placed under subpoena. Before examining the law on the subject, brief reference should be made to the testimony given at trial by Knight in an effort to determine the significance of the testimony which conceivably would have been given by Edwards.

Knight testified that he was an inmate of the federal penitentiary in Leavenworth and that he had several conversations with Whitecotton in that institution, Whitecotton having been initially incarcerated there on his plea of guilty to the robbery charge. The gist of Knight's testimony was that Whitecotton had told him that he had on occasion tried to persuade Plemons to plead guilty to the robbery charge and "confess to these crimes that he was charged with in order to beat the Texas detainer," and that he (Whitecotton) felt that if he could get Plemons to thus plead guilty he would get some consideration from the authorities. Whitecotton had previously denied any such conversation and claimed that he had never even met Knight. As indicated, Edwards' testimony apparently would have paralleled that of Knight.

Fed.R.Crim.P. 17 provides that a court shall order at any time that a subpoena be issued for service on a named witness upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. We have on repeated occasions held that a motion under Rule 17 is addressed to the sound judicial discretion of the trial court. Brady v. United States, 433 F.2d 924 (10th Cir. 1970); United States v. Reed, 413 F.2d 338 (10th Cir. 1969); and Speers v. United States, 387 F.2d 698 (10th Cir. 1967).

The *Brady* case is particularly close on its facts to the instant one. There, the defendant desired to subpoena two inmates at the Leavenworth penitentiary to New Mexico for the purpose of testifying as to threats made upon his life by a third party at that institution. The trial court subpoenaed one, but denied a subpoena for the second, on the ground that the testimony of the latter would only be cumulative. On appeal we held that there was no abuse of discretion on the part of the trial court in refusing to issue a writ of habeas corpus ad testificandum for the second witness whose testimony would have been cumulative.

In the instant case Edwards' testimony would only have been cumulative to that of Knight. And our study of Knight's testimony indicates that even its materiality is slight. In any event, however, under the circumstances we find no abuse of discretion on the part of the trial court in declining to subpoena Edwards at government expense.

## II.

It is next asserted that the jury erred in giving credence to the testimony of Whitecotton. Such testimony is described as both confusing and contradictory, and it is said that Whitecotton even impeached his own testimony. The weight to be given the testimony of any witness is a matter for the jury. United States v. Frazier, 434 F.2d 238 (10th Cir. 1970). And this rule applies to one who is himself an accomplice. United States v. Reid, 437 F.2d 94 (10th Cir. 1971).

In this same connection, at oral argument counsel urged error on the part of the trial court in failing to give an instruction to the jury regarding the manner in which it should view the testimony of an accomplice. It should be noted that this is not a case where Plemons was convicted on the uncorroborated testimony of an accomplice. Rather, there was strong corroborating evidence. The testimony of the FBI agent regarding Plemons' confession was in and of itself sufficient to carry the case to the jury. In any event, no request as required by Fed.R.Crim.P. 30 was made for an instruction regarding the testimony of an accomplice. For that reason, coupled with the fact there was strong corroborating evidence, we find no error on the part of the trial court in failing to give an accomplice instruction. Oertle v. United States, 370 F.2d 719 (10th Cir. 1966).

## III.

As indicated, some marked currency taken in the robbery was later found on Plemons' person. The trial court instructed the jury that the possession of recently stolen property permits the inference that he who possesses has participated in the theft, unless such possession be explained to the satisfaction of the jury by other facts and circumstances of the case.

Counsel does not object to the instruction, as such, but asserts the instruction should not have been given inasmuch as Plemons in his testimony "satisfactorily explained" his possession of the marked money. His explanation, incidentally, was that he had received the particular currency in question from his half brother, Mead. In reality, this of course is no explanation, as such is what the Government's evidence established. In any event, whether the explanation was satisfactory was up to the jury. If the jury determined that the explanation was not satisfactory, then under the instruction it was permitted to infer that the possessor of stolen property was a party to the theft. We find no error in the giving of the instruction. Cotton v. United States, 409 F.2d 1049 (10th Cir. 1969), and Jenkins v. United States, 361 F.2d 615 (10th Cir. 1966).

Judgment affirmed.