**UNITED STATES of America,**
**Petitioner-Appellee,**

v.

**Danny Otha ARMSTRONG et al.,**
**Defendants,**

**Michelle Sobel Perlman,**
**Respondent-Appellant.**

No. 73–1488
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 6, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Phillip D. Hardberger, San Antonio, Tex., Charles W. Tessmer, Ronald L. Goranson, Dallas, Tex., for respondent-appellant.

William S. Sessions, U. S. Atty., James W. Kerr, Jr., Asst. U. S. Atty., San Antonio, Tex., for petitioner-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

The appellant, Mrs. Michelle Sobel Perlman, was incarcerated after being held in civil contempt by a federal district court for refusal to answer questions before a grand jury under 28 U.S.C. § 1826. She appeals from the judgment of civil contempt. We remand the case for a further hearing.

Brian Perlman, husband of Michelle Perlman, was indicted by the federal grand jury for the Del Rio Division of the Western District of Texas on June 6, 1972, together with several codefendants. The indictment charged Brian Perlman and his codefendants with a variety of narcotics violations under 21 U.S.C. §§ 841(a)(1), 846, 960(a)(1), and 963. The federal district court set trial for October 16, 1972. The government then severed the cases of Brian Perlman and one codefendant, and postponed their trial pending the extradition of another defendant from Canada.

While Brian Perlman's trial was pending, the government on February 13, 1973 obtained an order requiring Mrs. Michelle Perlman to testify before the grand jury in connection with an investigation of suspected violations of 21 U.S.C. §§ 841(a)(1), 846, 960(a)(1), and 963. The court subsequently entered an order granting Mrs. Perlman use immunity pursuant to 18 U.S.C. § 6003.

Mrs. Perlman filed a motion to quash the appearance, invoking the marital privilege and asking to limit the testimony to matters not occurring in Mexico or Texas. The court held a hearing on February 20, 1973, to determine the extent to which the marital privilege would curtail Mrs. Perlman's testimony. The government agreed that Mrs. Perlman could not be made to testify against her husband, but requested the court to order her to testify against the other defendants. The court then severed Brian Perlman's case from the other defendants and ordered Mrs. Perlman to testify before the grand jury, with the limitation that she was not to testify to any matters concerning her husband. The court further ordered the grand jury not to divulge any of her testimony. Mrs. Perlman's attorney informed the court that she would rely on the marital privilege as grounds to refuse to supply any information except her name, address, and date of her marriage.

Mrs. Perlman was called before the grand jury later that same day. After her grand jury appearance the court held a hearing, where in response to the court's questions Mrs. Perlman acknowledged that she had appeared before the grand jury and had refused to answer any questions.[1] The court then held her in contempt, committed her to the custody of the marshal, and set bond at $150,000.

The following day, February 21, the court held another hearing. Mrs. Perlman again admitted that she had not answered any of the questions put to her before the grand jury. When the court inquired whether any of these questions related to the activities of her husband, she replied: "His name wasn't mentioned, but I feel that it is connected[2]."

1. The Court: Mrs. Sobel, did you appear before the grand jury.
Mrs. Perlman: Yes, sir.
The Court: Did you give testimony?
Mrs. Perlman: No, sir.

2. The following interchange took place among the court, Mrs. Perlman and her attorney:

The Court: Mrs. Perlman, did you appear before the grand jury yesterday?
Mrs. Perlman: Yes, sir.
The Court: And did the U. S. Attorney tell you that you were not to answer any questions about your husband or any of his activities? Were you given that warning?
Mrs. Perlman: Yes, sir.

After Mrs. Perlman and her attorney stated that she would continue to refuse to testify, the court held her in contempt and remanded her to custody without bail until such time as she should purge her contempt by testifying.

Mrs. Perlman raises four points on this appeal. She contends that (1) the district court should have given her *Miranda* warnings before questioning her about her failure to testify; (2) the marital privilege prevents her from giving *any* testimony about the case, since her husband is a defendant; (3) the order granting use immunity was insufficient to protect her against possible prosecution by the governments of Texas and Mexico; (4) there was insufficient evidence to show that she was in contempt.

█ There is no merit to Mrs. Perlman's first three points. Her reliance on *Miranda* is totally inapposite. We are not concerned here with a stationhouse interrogation. The trial court questioned Mrs. Perlman in open court, on the record, in the course of a judicial proceeding. Her attorney was present. *Miranda* warnings were not required here, just as they are not required when any other witness or defendant is questioned in open court.

██ The marital privilege does not extend so far as to bar Mrs. Perlman from giving testimony about her husband's codefendants which does not implicate her husband.[3] The basic purpose of the rule that one spouse is incompetent to testify against the other spouse is to preserve family peace by preventing husband and wife from becoming adversaries in a criminal proceeding. Hawkins v. United States, 1958, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125. Brian Perlman's codefendants thus fall outside the scope of this rule. Mrs. Perlman could be called as a witness at their trials. See United States v. Fields, 3 Cir. 1972, 458 F.2d 1194; O'Brien v. United States, 8 Cir., 1924, 299 F. 568. Similarly, she cannot refuse to testify before the grand jury about their activities. Her husband cannot be harmed by her testimony, since she is not to testify as to matters implicating him, and since his trial has been severed. 3 Wharton's Criminal Evidence § 777, at 113–14 (12th ed. 1955).

The Court: And were you asked certain questions?
Mrs. Perlman: Yes.
The Court: Now, during the period of time that you were asked these questions, where was your lawyer?
Mrs. Perlman: He was outside the room.
The Court: In other words, he was available though for you to consult with? Did you ever feel the need to consult with him about any of the answers to the questions you were asked?
Mrs. Perlman: I consulted with him twice.
The Court: You went out of the room and consulted with him twice. All right. And did you refuse to answer all questions that you were asked by the grand jury?
Mrs. Perlman: Yes, sir.
The Court: Were any questions asked of you about the activities of your husband in connection with any part of this alleged grand jury indictment?
Mrs. Perlman: His name wasn't mentioned, but I feel that it is connected.
The Court: All right, just tell us how you feel it was connected?

Mr. Hardberger: I hate to interrupt, but I think for her to adequately explain that answer to the Court would be a violation of the husband and wife—
The Court: You are asking her not to answer, is that right? You are instructing her not to answer?
Mr. Hardberger: Yes, Your Honor, but with respect to the Court, and I would like to explain to the Court why I'm saying that. Because if she—
The Court: Are you advising her not to answer these questions that the grand jury propounded to her, after having given her use immunity and under the instructions that this Court has given her to answer?
Mr. Hardberger: Yes, Your Honor, I am . . .

3. The extent of this privilege in the federal courts is a matter of federal law. Fed. R.Crim.Pro. 26. Thus the two Texas cases relied on by Mrs. Perlman, Dobbs v. State, 1908, 54 Tex.Cr.R. 579, 113 S.W. 921, and Dungan v. State, 1898, 39 Tex.Cr.R. 115, 45 S.W. 19, are not controlling here.

**316**

Mrs. Perlman's testimony before the grand jury could not increase her risk of being prosecuted by another jurisdiction. The State of Texas would be barred from making use of any testimony obtained under a federal grant of immunity. Murphy v. Waterfront Commission, 1964, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678. Further, the secrecy of the grand jury proceedings is a sufficient safeguard against any danger of foreign prosecution. In re Tierney, 5 Cir. 1972, 465 F.2d 806.

We agree, however, with Mrs. Perlman's contention that there was insufficient evidence to support a finding of contempt. Mrs. Perlman's admissions to the district court established only that she had refused to answer any of the questions put to her before the grand jury. There was no evidence before the district court to indicate that any of those questions related to matters about which Mrs. Perlman had been ordered to testify. Indeed, Mrs. Perlman expressed her opinion that the questions implicated her husband. The trial court apparently did not question the government attorney or any of the grand jurors, all of whom were present in court at the February 20 hearing, as to the nature of the questions asked Mrs. Perlman. Nor was the transcript of the grand jury proceedings before the district court; the government has made this transcript available for the first time to this Court on appeal. Moreover, we cannot agree with the government's suggestion that the statements of Mrs. Perlman and her attorney that she would refuse to answer any and all questions established contempt in violation of the statute, where there was no evidence that she actually refused to answer questions which did not implicate her husband.

We express no opinion as to whether the transcript of the grand jury proceedings establishes that Mrs. Perlman was in contempt. The case is remanded

to the district court for a hearing to reconsider the finding of contempt in light of the grand jury transcript and any other relevant testimony as to the events occurring before the grand jury.[4]

4. The hearing need not comply with the full procedural requirements of Rule 42, Fed.R.Crim.Pro. Shillitani v. United States, 1966, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622; In re October 1969 Grand Jury, 7 Cir. 1970, 435 F.2d 350; In re Giancana, 7 Cir. 1965, 352 F.2d 921.