**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Leo Carl MUNN, Defendant-Appellant.**

**No. 74–1240.**

United States Court of Appeals, Tenth Circuit.

Dec. 16, 1974.

---

Submitted on the briefs.

Victor R. Ortega, U. S. Atty., and Richard J. Smith, Asst. U. S. Atty., for plaintiff-appellee.

C. A. Bowerman, Albuquerque, N. M., for defendant-appellant.

Leo Carl Munn, pro se.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Munn was convicted by a jury on both counts of a two count indictment charging him with robbery of a federally insured bank. Specifically, count one in the indictment charged Munn, and another, with forcibly taking the sum of $805 in currency from the person and presence of an employee of the Citizens Bank in Albuquerque, New Mexico, and further charged that in committing the aforesaid robbery the life of one Ben Naranjo was placed in jeopardy through the use of a revolver, in violation of 18 U.S.C. § 2113(a) and (d), and 18 U.S.C. § .2. In count two Munn and his code-fendant were charged with stealing $805 in currency from the Citizens Bank, in violation of 18 U.S.C. § 2113(b) and 18 U.S.C. § 2.

Munn's codefendant pleaded guilty to another bank robbery charge and was dismissed from the present proceeding. As indicated, Munn was convicted by a jury on both counts, and was sentenced to fifteen years on count one, and five years on count two, such sentences to be served concurrently. Munn now appeals his conviction and seeks reversal on a wide variety of grounds. Since one ground for reversal relates to the sufficiency of the evidence, let us briefly summarize the evidence adduced upon trial.

The Government's evidence showed that Munn's codefendant, one Gary John Nekuda, held up a bank employee at gun point and robbed her of some $805 in currency. The robber, Nekuda, ran from the bank to a nearby vehicle which was awaiting him, and Nekuda and the driver of the vehicle fled the scene. It was the Government's theory of the case that Munn was the driver of the getaway vehicle. Jumping ahead a bit in our summarization of the evidence, Nekuda testified in behalf of Munn, and admitted that it was he who robbed the bank, but denied that Munn was the driver of the getaway car.

The Government's evidence tying Munn into the bank robbery was both direct and circumstantial. A bank customer, one Dan Garcia, was in the bank at the time of the robbery, and he followed the robber to the getaway car. This witness identified Munn as being the driver of the getaway vehicle. It is quite true that Garcia's was not a positive and unequivocal identification. He conceded that he was not "100% certain." Nonetheless Garcia did give a description of the getaway driver that fit Munn, and testified that the driver looked like Munn. In addition, there was other testimony to the effect that during the early investigation of the case Garcia was shown photographs of some seven individuals, and that he had picked out the

photograph of Munn as the driver of the getaway car.

The Government ·offered other evidence which established that Munn and Nekuda were close friends and roommates in an· Albuquerque apartment house as of the date of the robbery, had been seen together shortly before the robbery, and then both disappeared immediately after the robbery. It was undisputed that Munn had himself rented the getaway vehicle, which was a U-Haul pickup truck, from a car rental on the day of the robbery, using a fictitious name and a nonexistent address. Additionally, Munn's fingerprint was found on the left door handle of the getaway vehicle, which had been abandoned after the robbery, indicating, according to the Government, that it was Munn who last closed the car door.

As mentioned, Nekuda testified in Munn's behalf, the latter exercising his right not to testify. Nekuda testified that he had robbed the bank, but that Munn was not the driver of the getaway car. On rebuttal, the Government called two Government agents who testified that when Nekuda was questioned upon his arrest several weeks after the robbery, he, Nekuda, had at that time indicated that Munn was the driver.

 At the conclusion of the Government's case counsel moved· for a judgment of acquittal, and upon presentation of all the evidence this motion was renewed. Both motions were denied and error is now predicated on these rulings of the trial court. It is asserted that the evidence is legally insufficient. We do not agree. At this stage of the proceedings, the testimony and the inferences therefrom must be viewed in a light most favorable to the Government. United States v. Frazier, 434 F.2d 238 (10th Cir. 1970), and McGee v. United States, 402 F.2d 434 (10th Cir. 1968). Our study of the record convinces us that there was sufficient evidence tying Munn to the robbery to warrant submission of the matter to a jury and to support the jury's determination that Munn was in fact the driver of the getaway car. The fact that Nekuda exonerated Munn only posed an issue to be resolved by the trier of the facts. The jury has now resolved that matter, and we are not at liberty to disturb its resolution of the matter.

 Munn proved to be a difficult client, and had a succession of appointed counsel, four to be exact, and he was satisfied with none. Indeed, Munn had sharp disagreement with all counsel as to how his case was to be conducted. And in addition to a difference of opinion as to trial strategy, Munn physically assaulted three of his lawyers, including the lawyer who ultimately represented him at trial. On the morning of the trial Munn's fourth appointed counsel sought to withdraw because of his differences with Munn. This motion was denied and there is minor suggestion that this was error. We see no error, however, in this ruling. Additionally, Munn's fourth court appointed counsel had filed certain discovery motions which were predicated upon his inability to properly communicate with his client. These were denied, and we perceive of no error under the circumstances of this case. Counsel is somewhat vague as to just what matter he sought to discover, and admits that much of the matter sought would not ordinarily be discoverable by motion. He argues, however, that a different result should obtain because of Munn's noncooperation. We do not agree that a defendant by his own conduct can thus broaden the scope of discovery.

Perhaps the main matter urged on appeal is the sequestration of the defendant during a short portion of his trial. The facts and circumstances surrounding such sequestration should be developed. As mentioned above, Munn had physically assaulted three of his court appointed counsel, and this fact was known to the trial judge. Then, a few weeks before trial of the case, there was a hearing on some motions, at which time Munn, in open court, threatened the court with violence, and referred to certain of his prior counsel as "fascist pigs." On that·

occasion the trial court warned Munn that it would not countenance any type of a disturbance or a scene, and that if upon trial Munn acted improperly he would be taken from the courtroom proper and sequestered in a room in the marshal's office, where he could hear the courtroom proceedings over a building broadcast system.

It was in this setting that Munn disregarded the trial court's earlier warning and created a disturbance in the courtroom just as jury selection was about to begin. Without going into specifics, Munn directed exceedingly foul and abusive language at the trial judge and his counsel. The trial court then ordered Munn sequestered in the marshal's office, where he could hear the proceedings. Munn was also advised that he could from time to time confer with his counsel while he was absent from the courtroom proper.

Actually, Munn was physically absent from the courtroom proper only about one hour and fifteen minutes. He was taken from the courtroom at about 10:00 A.M. on the opening day of his trial. Jury selection then ensued, and after the jury was selected there was a fifteen-minute recess. And then three witnesses were called before court recessed for noon at about 11:30 A.M. At the opening of the afternoon session Munn was brought back into the courtroom proper, upon his promise to behave, and he remained in attendance throughout the remaining two days of his trial.

One other fact in connection with the sequestration of Munn should be mentioned. During the voir dire of the prospective jurors, the trial court was advised, apparently by a marshal, that Munn had indicated that he would behave himself and desired to return to the courtroom. The trial court declined to act at that particular moment, but, as indicated, did return Munn to the courtroom when court convened for its afternoon session.

It is argued here that Munn's confrontation rights under the Sixth Amendment were violated when he was thus sequestered in the marshal's office during a portion of his trial. In thus arguing, counsel relies on Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), and claims that the guidelines laid down in that case were not met by the trial court in the instant case. In that case the Supreme Court held that a defendant could lose his right to be present at his trial if, after he is warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disruptive and disrespectful of the court that his trial cannot be carried on with him in the courtroom. In our view, the trial court substantially complied with the teaching of Illinois v. Allen, supra, and any deviation therefrom was under the circumstances harmless beyond a reasonable doubt.

 Counsel first claims that Munn was removed from the courtroom without prior warning. It is true that Munn was not warned in the minutes immediately preceding the outburst which resulted in his removal, but Illinois v. Allen, supra, does not in our view require such a contemporaneous warning. Several weeks before trial Munn had made a tirade against the judge and his counsel, and on this occasion the trial court fully apprised Munn of the consequences of a repeat performance. Accordingly, it was not necessary for the trial court to thereafter warn him a second time before taking affirmative action.

In connection with his removal from the courtroom, it should be noted that even though removed from the courtroom, Munn was able to hear the progress of his trial through a broadcasting system. This was greater protection than was afforded the sequestered defendant in Illinois v. Allen, supra. Also, Munn was advised, as was suggested in Illinois v. Allen, supra, that he would be afforded opportunity to confer with his attorney. Whether he did or not, the record does not reveal. However, as earlier mentioned, Munn was only out of the courtroom something over an hour before he was returned on his promise of

good behavior. But this was not soon enough, asserts counsel, who now argues that Munn should have been returned when the trial court was first advised that Munn desired to change his ways and be permitted to return to the courtroom.

■ It is true that Illinois v. Allen, *supra*, states that once a defendant's confrontation right has been lost through misconduct, it may be regained "as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." 397 U.S. at 343, 90 S.Ct. at 1061. We do not deem the foregoing language, however, to be an absolute mandate dictating the *return of every defendant who* has been removed from the courtroom simply on his verbal promise to reform. Prior conduct may indicate such a promise is of little value. Certainly some discretion is still left with a trial court to pass upon the sincerity of a defendant's recantation.

■ In declining to return Munn to the courtroom on his initial request to be so returned, the judge indicated that he was fearful that despite the promise of good behavior Munn might nonetheless commit further acts of misconduct that would work to his, Munn's, prejudice. And *defense counsel was of the same view.* In this regard defense counsel stated that he "shared" the trial court's concern and stated that if subsequent acts of misconduct on the part of Munn took place in the presence of the jury, he would move for a mistrial. In fact defense counsel went a bit further than simply "sharing" the judge's concern, and stated that he himself "anticipated" that Munn would try to cause disruption of the courtroom proceedings if he were returned to the courtroom. Under such circumstances, it is hard to fault the trial court for declining to take immediate action on Munn's request. In any event, we find no abuse of discretion.

■ Additionally, any possible error by the trial court in its sequestration of the defendant was harmless beyond a reasonable doubt, and would therefore not be grounds for a reversal. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and 28 U.S.C. § 2111. As indicated, it was midway through voir dire examination of prospective jurors that the trial court was first advised that Munn wanted to be brought back to court. The trial court decided to take no action at that time on Munn's request, and the jury was impaneled and sworn. The Government then made its opening statement, with defense counsel reserving his opening statement. The Government thereafter called three witnesses before the noon recess. The first witness simply stated that the building's broadcasting system was functioning properly so that Munn was able to hear the proceedings then taking place in the courtroom. The second witness was a Wells Fargo guard who a few minutes prior to the robbery had delivered the bank a canvas bag containing the $805 in currency which was later taken from the bank by Nekuda. He left the bank shortly before the robbery. The third witness called in the morning session was an F.B.I. agent who identified pictures of Nekuda and Munn. This was done for the purpose of having pictures of both Nekuda and Munn introduced into evidence, which pictures could then be used by subsequent witnesses for identification purposes. Court was then in recess over the noon hour and when court reconvened for the afternoon session Munn was permitted to return on his renewed promise of good behavior, and he remained in attendance for the balance of his two-day trial.

We think the mere recital of what transpired during the time Munn was absent from the courtroom demonstrates conclusively that any possible error by the trial court was under the circumstances harmless beyond a reasonable doubt. And, as indicated, in our best judgment the trial court did not in fact commit error in its handling of Munn's courtroom misbehavior. The manner in which the trial court handled the situation in our view squares with the rationale of Illinois v. Allen, *supra*. In fact,

all things considered, the trial court exhibited considerable, and we might add commendable, restraint.

 Complaint is also made that Dan Garcia's in-court identification of Munn was tainted by the fact that he had previously been shown a gallery of some seven photographs by the F.B.I., including one of Munn, and that this "showing" was impermissibly suggestive because the other six photographs were of persons bearing little or no resemblance to Munn. The seven pictures thus shown Garcia are in the record before us, and our examination of these photographs does not indicate that there was such a suggestive showing. Each of the seven persons portrayed is a male Caucasian; each would appear to be of the same general age grouping; each has considerable hair and of a similar color; and four are clean shaven and three are not. We perceive no error in the composition of this gallery, and do not believe that it was suggestive in nature.

Even though the sentences on counts one and two were to be served concurrently, error is asserted in connection with the trial court's imposing separate sentences on counts one and two. As indicated at the outset of this opinion, Munn was sentenced to fifteen years on count one for robbery, and five years on count two for larceny of more than $100 from a federally insured bank. Counsel argues that the imposition of two separate sentences was under the circumstances improper, since both counts grew out of one episode. Such being the case, counsel asserts that the larceny is merged in the completed robbery.

 The Government agrees that under the circumstances there was a merger of offenses and that the judgment entered on count two should be vacated. We agree. See Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1956); Gorman v. United States, 456 F.2d 1258 (2d Cir. 1972); and United States v. Von Roeder, 435 F.2d 1004 (10th Cir. 1970).

Munn's dissatisfaction with counsel has continued during the proceedings on appeal. After counsel filed a brief in Munn's behalf, Munn indicated his dissatisfaction therewith, and appointed counsel was then permitted to withdraw from further participation in the matter. Munn was then permitted to supplement his counsel's brief with a pro se brief. In his pro se brief, however, Munn adopted verbatim the brief of his erstwhile counsel and then raised some fourteen additional matters. Suffice it to say that none of the additional matters raised by Munn, pro se, finds support in the record or in the applicable law.

Judgment and sentence entered on count one is affirmed, and the judgment and sentence entered on count two is vacated.