**In re Grand Jury:**
**In re Ivis LONG VISITOR,**
**Witness.**

**In re Angie LONG VISITOR, Witness.**

**In re Joanna LeDEAUX, Witness.**

**No. 75–1744.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 1, 1975.

Decided Oct. 6, 1975.

---

Kenneth E. Tilsen, St. Paul, Minn., for appellants.

Richard Hurd, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before BRIGHT, WEBSTER and HENLEY, Circuit Judges.

WEBSTER, Circuit Judge.

Appellants Ivis Long Visitor, Angie Long Visitor, and Joanna LeDeaux were found in civil contempt by the District Court[1] for refusing to give testimony before a federal grand jury which was investigating the death of two FBI agents and an Indian resident on the Pine Ridge Reservation on June 26, 1975. The District Court ordered appellants to be confined until they should purge themselves of contempt.[2] It denied their

---

1. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

2. Each order of confinement was "for the period of the term of the Grand Jury, which said Grand Jury convened April 21, 1975, including

subsequent application for bail pending appeal, holding that such appeal was frivolous and taken for delay, *see* 28 U.S.C. § 1826(b), and that admission to bail would be detrimental to the public interest.

We expedited the appeal on the merits, together with appellants' application for bail pending appeal made to this court. Following oral argument and upon our review of the briefs of the parties and of the record before us, we affirm the order of confinement of the District Court.

The principal facts are these:

On June 26, 1975, Ronald Williams and Jack Coler, Special Agents for the Federal Bureau of Investigation, were shot and killed on the Pine Ridge Indian Reservation. On the same day, Joseph Stuntz, a resident of the reservation, was found shot to death in the same general area. A federal grand jury was convened in the District of South Dakota to investigate these deaths, and appellants, considered possible eyewitnesses to the shootings, were subpoenaed to testify. Appellants Angie Long Visitor and Ivis Long Visitor appeared before the grand jury on July 14, 1975. At that time, Angie Long Visitor claimed her Fifth Amendment privilege against self-incrimination; Ivis Long Visitor protested his presence and refused to answer questions. On August 24, 1975, appellant Joanna LeDeaux was arrested on a warrant issued by the United States Magistrate for the Western Division of South Dakota alleging that she was a material witness to matters being investigated by the grand jury. On August 25, 1975, she was released on her own personal recognizance, at which time her attorneys informed the United States Magistrate and District Judge that she would claim her Fifth Amendment privilege against self-incrimination in any testimony before the grand jury.

On September 2, 1975, the District Court entered an ex parte order upon the application of the government, granting each appellant "use" immunity pursuant to 18 U.S.C. § 6003 and ordering each appellant to testify. Later that day, each appellant appeared before the grand jury and refused to testify. The grand jury thereupon requested the District Court to issue an order adjudging the appellants in contempt of court. Each appellant submitted an identical set of ten motions regarding the grand jury proceedings to the District Court. That same day, the District Court issued an order requiring the appellants and their counsel to appear for a hearing to be held September 16, 1975, to (1) hear arguments on the appellants' motions, (2) show cause why the appellants should not testify before the grand jury, and (3) show cause why the appellants should not be held in contempt.

On September 17, 1975, following the hearing, the District Court again entered an order directing the appellants to testify and granting them immunity under 18 U.S.C. § 6003. On the afternoon of September 17, 1975, the appellants appeared before the grand jury and again refused to testify. Subsequently, the grand jury renewed its request that the Court issue an order adjudging each appellant in contempt of court. On September 22, 1975, following a hearing, the District Court entered an order finding each appellant in contempt of court, and remanded appellants to the custody of the United States Marshal.[3] Appellants immediately moved for a stay of execution or an order granting bail pending appeal. The District Court denied each motion in an unpublished memorandum opinion.

Appellants filed a notice of appeal in the District Court on September 23, 1975, and an application for bail pending appeal in this court on September 24, 1975. They assign two of the rulings at the September 16–17 hearing on their motions as error, contending: (1) that the District Court should have quashed

extensions, or until [s]he testifies or provides information to the Grand Jury concerning the deaths of Ronald Williams, Jack Coler and Joseph Stuntz on the Pine Ridge Reservation, on June 26, 1975, but in no event shall such confinement exceed 18 months."

**3.** *See* note 2, *supra.*

the grand jury subpoenas in that a United States District Court has no jurisdiction to enforce a subpoena served upon an Indian while present in and a resident of the Pine Ridge Reservation; and (2) that the District Court should have set aside the grant of immunity and allowed appellants to decline to testify, because the immunity was inadequate to protect them from use of their grand jury testimony in any subsequent tribal court prosecutions that might arise. In addition, appellant Joanna LeDeaux raises two claims which are peculiar to her case: (1) that the District Court should have heard evidence of threats against her and members of her family; and (2) that she should not be compelled to testify in regard to an investigation of an incident in which she was encouraged by agents of the United States to act as a negotiator between agents of the United States and other individuals.

## I.

### Jurisdiction

Appellants contend that tribal membership protects them from the reach of a federal grand jury subpoena. Reliance is placed upon the 1868 Treaty with the Sioux Indians, 15 Stat. 635, and the Act of 1877, 19 Stat. 254, which reaffirmed the treaty.[4] The government responds that provisions of the treaty dealing with criminal offenders on Indian reservations were made inoperable by the adoption of 18 U.S.C. § 1152, which extends the application of the general enclave laws of the United States as to punishment to offenses on Indian reservations, and 18 U.S.C. § 1153,[5] which extends federal jurisdiction to major crimes committed thereon. We find it unnecessary to decide this precise question because we hold that the exercise of the grand jury subpoena power is coextensive with the exercise of federal jurisdiction under § 1153.

■■■■ While federal abrogation of Indian retained sovereignty is not lightly presumed, *Menominee Tribe of Indians v. United States,* 391 U.S. 404, 412–13, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968); *Cook v. United States,* 288 U.S. 102, 120, 53 S.Ct. 305, 77 L.Ed. 641 (1933); *United States v. Payne,* 264 U.S. 446, 448, 44 S.Ct. 352, 68 L.Ed. 782 (1924); *United States v. White,* 508 F.2d 453, 456 (8th Cir. 1974), we cannot conclude otherwise than that the extension by Congress of federal jurisdiction to crimes committed on Indian reservations inherently includes every aspect of federal criminal procedure applicable to the prosecution of such crimes.[6] This is particularly true

**4.** Paragraph 3 of Article I of the 1868 Treaty with the Sioux Indians, 15 Stat. 635, provides that:

If bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their agent and notice by him, deliver up the wrong-doer to the United States, to be tried and punished according to its laws . . . . .

Appellants argue that this article is inapplicable because there has been no showing that they are "bad men" within the meaning thereof.

Article II of the Treaty provides in part:
[T]he United States now solemnly agrees that no persons except those herein designated and authorized so to do, and except such officers, agents, and employes of the government as may be authorized to enter upon Indian reservations in discharge of duties enjoined by law, shall ever be permit-

ted to pass over, settle upon, or reside in the territory described in this article . . . . .

**5.** 18 U.S.C. § 1153 provides in part:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to kill, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

\* \* \* \* \* \*

**6.** 18 U.S.C. § 3242 provides:

All Indians committing any of the following offenses; namely, murder, manslaughter, rape, carnal knowledge of any female, not his wife, who has not attained the age of

of a federal grand jury, which is an arm of the district court through which it derives its power. *See Levine v. United States,* 362 U.S. 610, 617, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960); *Cobbledick v. United States,* 309 U.S. 323, 327, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *United States v. Stevens,* 510 F.2d 1101, 1106 (5th Cir. 1975); *Bursey v. United States,* 466 F.2d 1059, 1082 (9th Cir. 1972). Major offenses committed on an Indian reservation can only be prosecuted in federal court upon a grand jury indictment. U.S.Const. Amend. V; Fed.R.Crim.P. 7(a). An Indian reservation provides no sanctuary from the reach of a federal subpoena to compel testimony before a grand jury on matters within the jurisdiction of the District Court. The jurisdictional contentions of the appellants are therefore without merit.

## II.

### *Immunity*

■ Appellants next contend that the grant of "use" immunity [7] by the District Court was insufficient to protect them from the jeopardy of tribal prosecutions based upon evidence discovered as a result of such testimony. Appellants argue that, while the purposes of the Fifth Amendment preclude the use in state prosecutions of evidence obtained from federally compelled testimony under a grant of immunity, *see United States v. Armstrong,* 476 F.2d 313, 316 (5th Cir. 1973), *citing Murphy v. Waterfront Commission,* 378 U.S. 52, 79, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), the same inhibition does not apply to Indian tribes, which are not states. *See Wounded Head v. Tribal Council of the Oglala Sioux Tribe,* 507 F.2d 1079, 1081 (8th Cir. 1975), *citing Barta v. Oglala Sioux Tribe,* 259 F.2d 553, 556 (8th Cir. 1958), *cert. denied,* 358 U.S. 932, 79 S.Ct. 320, 3 L.Ed.2d 304

(1959), and *Iron Crow v. Oglala Sioux Tribe,* 231 F.2d 89 (8th Cir. 1956). We reject this contention.

■ First, the Indian Civil Rights Act, 25 U.S.C. § 1302(4), expressly protects an Indian from self-incrimination.[8] Second, the testimony of a witness before a federal grand jury is protected by an obligation of secrecy under court supervision. Fed.R.Crim.P. 6(e). *See United States v. Armstrong, supra,* 476 F.2d at 316; *In re Tierney,* 465 F.2d 806, 811–12 (5th Cir. 1972), *cert. denied,* 410 U.S. 914, 93 S.Ct. 959, 35 L.Ed.2d 276 (1973); *In re Parker,* 411 F.2d 1067, 1069–70 (10th Cir. 1969), *vacated as moot sub nom., Parker v. United States,* 397 U.S. 96, 90 S.Ct. 819, 25 L.Ed.2d 81 (1970). Third, and in our view decisive of the question, we think this issue has been prematurely raised. The record is silent on any pending or threatened prosecution of the appellants by any tribal court. *See Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 478–80, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). The power of a federal grand jury to compel testimony cannot be circumscribed by the speculative uses to which such testimony may subsequently be put by another sovereignty not subject to the commands of the Fifth Amendment.

## III.

### *Joanna LeDeaux's Claims*

■ Two independent defenses have been advanced by Joanna LeDeaux in support of her refusal to testify. First, she contends that she and her family have been subjected to threats. The District Court rejected her offer of proof. Even if we assume such threats were in fact made, we must nonetheless

---

sixteen years, assault with intent to commit rape, incest, assault with intent to kill, assault with a dangerous weapon, arson, burglary, robbery, and larceny on and within the Indian country shall be tried in the same courts, *and in the same manner,* as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States. (emphasis added)

7. *See* 18 U.S.C. §§ 6002 and 6003.

8. 25 U.S.C. § 1302(4) provides:

No Indian tribe in exercising powers of self-government shall—

  \*    \*    \*    \*    \*    \*

(4) compel any person in any criminal case to be a witness against himself;

  \*    \*    \*    \*    \*    \*

reject this defense: it is well established that fear of reprisal cannot excuse a witness from testifying before a grand jury. *See LaTona v. United States,* 449 F.2d 121, 122 (8th Cir. 1971); *see also Piemonte v. United States,* 367 U.S. 556, 559 n.2, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961); *In re Grand Jury Proceedings,* 509 F.2d 1349, 1350 (5th Cir. 1975).

■ Second, LeDeaux claims immunity from giving testimony because it would compromise her quasi-official role as a negotiator during the incidents of June 26, 1975. No persuasive authority has been cited to us and we find nothing in the record before us, such as promises made by the government that information gained during negotiations would be privileged, which would support such a claim.

IV.

*Bail*

While some question is raised with respect to the original ex parte grant of immunity, a subsequent hearing was held and it does not appear that any issue of due process or statutory compliance remains. It is also undisputed that the appellants have refused and continue to refuse to give testimony before the grand jury with respect to the shooting. Civil contempt proceedings have been used for centuries to secure compliance with judicial decrees. *See Shillitani v. United States,* 384 U.S. 364, 368, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1965), wherein Justice Clark stated:

There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt. *United States v. United Mine Workers,* 330 U.S. 258, 330–332 [67 S.Ct. 677, 713–714, 91 L.Ed. 884] (1947) (Black and Douglas, JJ., concurring in part and dissenting

in part); *United States v. Barnett,* 376 U.S. 681, 753–754 [84 S.Ct. 984, 1019–1020, 12 L.Ed.2d 23] (1964) (Goldberg, J., dissenting). And it is essential that courts be able to compel the appearance and testimony of witnesses. *United States v. Bryan,* 339 U.S. 323, 331 [70 S.Ct. 724, 730, 94 L.Ed. 884] (1950). A grand jury subpoena must command the same respect. Cf. *Levine v. United States,* 362 U.S. 610, 617 [80 S.Ct. 1038, 1043, 4 L.Ed.2d 989] (1960). Where contempt consists of a refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance. *McCrone v. United States,* 307 U.S. 61 [59 S.Ct. 685, 83 L.Ed. 1108] (1939); *Giancana v. United States,* 352 F.2d 921 (C.A. 7th Cir.), cert. denied, 382 U.S. 959 [86 S.Ct. 437, 15 L.Ed.2d 362] (1965). The conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings absent the safeguards of indictment and jury, *Uphaus v. Wyman,* 364 U.S. 388, 403–404 [81 S.Ct. 153, 155, 5 L.Ed.2d 148] (1960) (Douglas, J., dissenting), provided that the usual due process requirements are met.

384 U.S. at 370–71, 86 S.Ct. at 1535 (footnotes omitted).

■ We affirm the District Court's finding that the appellants were in civil contempt. We hold that its order remanding appellants to custody until they shall have purged themselves of contempt was within its judicial power and was not an abuse of discretion.

■ In view of our holding, the appellants' application for bail pending appeal is rendered moot.[9]

Affirmed. Our mandate shall issue forthwith.

---

9. 28 U.S.C. § 1826(b) provides that no person confined for refusal to testify shall be admitted to bail pending the determination of his appeal from the order of confinement "if it appears

that the appeal is frivolous or taken for delay." Future applications by others which assert the same defenses disposed of herein will be assessed in light of this opinion.