**Richard A. MOORE, Petitioner,**

v.

**David SCURR, Warden, Iowa State Penitentiary, Respondent.**

**Civ. No. 80–44–D.**

United States District Court,
S. D. Iowa, C. D.

Aug. 28, 1980.

ing part of the testimony of an important witness for the prosecution deprived him of his right to confront that witness in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States.

Dennis F. Chalupa & Bradley McCall, Brierly, McCall, Girdner, Chalupa & Somers, Newton, Iowa, for petitioner.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, for respondent.

## ORDER GRANTING WRIT OF HABEAS CORPUS

VIETOR, District Judge.

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by an inmate of the Iowa State Penitentiary at Fort Madison, Iowa, where respondent is the warden. Petitioner is serving a sentence of life imprisonment imposed on March 21, 1977, by a judge of the Iowa District Court after being found guilty by a jury of the crime of first degree murder. His conviction was affirmed by the Iowa Supreme Court, *State v. Moore*, 276 N.W.2d 437 (Iowa 1979). With the advice of the parties, the court has determined that an evidentiary hearing is unnecessary, *see* Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts, and the case is now fully submitted for decision upon the record, including a transcript of the trial, and briefs and oral arguments of counsel.

Because the issue raised in this proceeding was raised and resolved against petitioner in the criminal proceedings in the Iowa District Court and the Iowa Supreme Court, he has exhausted his state remedies. 28 U.S.C. § 2254(b).

## GROUNDS FOR RELIEF

As grounds for relief, petitioner asserts that his exclusion from the courtroom dur-

## FACTS

The material facts giving rise to plaintiff's claim for relief are undisputed.

On June 3, 1976, petitioner was charged by county attorney's information in Jasper County, Iowa, with the murder of his wife, Terri Williams Moore, in violation of section 690.1 of the 1975 Code of Iowa. On June 15 the court ordered the sheriff to deliver petitioner to the Iowa Security Medical Facility at Oakdale, Iowa, for psychiatric evaluation in order to determine petitioner's competency to stand trial and to determine petitioner's ability to form the intent necessary as an element of the offense charged against him. At the conclusion of the period of evaluation, a staff psychiatrist at the Security Medical Facility reported to the court that petitioner was competent to participate in judicial proceedings and that he had capacity to form the requisite intent at the time of the alleged offense.

Trial commenced on February 1, 1977, but the jury selection proceedings were interrupted when petitioner suddenly attempted to confess and plead guilty. After proceedings out of the presence of the jury the court determined that there was a reasonable doubt as to petitioner's sanity and ordered a trial by another jury to determine his competency to stand trial on the criminal charges. The competency trial jury found petitioner to be competent to stand trial, and the murder trial resumed on February 8. The jury returned the guilty verdict on February 23.

The primary issue in petitioner's murder trial was his defense of insanity.[1]

---

1. Under Iowa law, the state must prove a defendant's sanity beyond a reasonable doubt when substantial evidence appears in the record raising an insanity fact issue. *State v. Thomas*, 219 N.W.2d 3 (Iowa 1974). Iowa ap-

plies the M'Naghten rule, *State v. Thomas, supra*, 219 N.W.2d at 5–6, that one is not guilty by reason of insanity if, "at the time of committing the act, the party accused was labouring under such a defective reason, from disease of

On the afternoon of February 16, the fifth day of the trial, the judge was advised that during the noon hour petitioner assaulted and injured a jailer who was returning him to the jail for the lunch hour. The judge was also advised that during petitioner's evaluation at the Security Medical Facility, he had assaulted persons there and had to be separated from other patients because of his violent conduct. The trial judge ordered that petitioner be restrained by a body belt and handcuffs to be placed inside petitioner's coat so that it would not be ascertainable by the jurors, and petitioner was so restrained during the rest of the trial.

On February 18, the seventh day of the trial, the state's principal expert witness on the insanity issue, Dr. Paul Loeffelholz, a psychiatrist and clinical director of the Security Medical Facility, testified. During his direct testimony, the following occurred:

Q. What, if any, was Richard Moore's response when he was told that you didn't believe him?

A. He became somewhat glum when he got those messages, irritable, demanding and made threats, and within a short time was demanding his discharge and if he wouldn't get discharged he would take a hostage and leave.

THE DEFENDANT: You're a liar.

Dr. Loeffelholz continued at some length to complete his answer, and another question was asked and a short answer given, when the following occurred:

MR. CHALUPA: Your Honor, may we have a recess at this time?

THE DEFENDANT: I think—take this Court and shove it.

THE COURT: Members of the Jury, we will be at recess until further notice.

After a 35 minute recess the trial resumed and Dr. Loeffelholz continued giving his direct testimony. After eight questions and answers the following occurred:

Q. Doctor, from the background I've given you earlier, in your testimony Mr. Moore has stated on repeated occasions that he works for the Denver Police Department and these—

THE DEFENDANT: Martin down there, Lieutenant Callig down there, too.

THE COURT: Mr. Moore, will you please remain silent. We will maintain order during—

THE DEFENDANT: This ain't a Court.

THE COURT: —of this trial.

THE DEFENDANT: This is bullshit.

THE COURT: If you continue with your outbursts, you will be removed from this Court room.

THE DEFENDANT: Remove me. Big deal. I ain't interested in your Court room, flying your bombs and your bullshit. You want to bomb, you bomb it yourselves—

THE COURT: May the record show that the Defendant—

THE DEFENDANT: —or being your funky President.

THE COURT: —has been removed from the Court room by the Sheriff and the Deputy Sheriff. This trial will continue without the presence of the Defendant being present.

With petitioner absent from the courtroom, the direct examination of Dr. Loeffelholz continued to its conclusion 26 questions and answers later, and cross-examination proceeded through more than 65 questions and answers. A recess was then taken after which petitioner returned to the courtroom where he remained and behaved for the balance of the trial. Dr. Loeffelholz's testimony was concluded after the recess.

During petitioner's absence, Dr. Loeffelholz, on direct examination, testified in response to a hypothetical question that in his opinion the petitioner knew the nature and

the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong." *M'Naghten's Case*, 10 Cl. & F. 210, 8 Eng.Rep. 722. At the time of petitioner's trial,

these procedural and substantive provisions were applied under Iowa case law, but the substantive provision is now codified in section 701.4 of the Iowa Criminal Code.

consequences of his act and knew the difference between right and wrong on the date of the offense, and testified as to personal observations of petitioner and other underlying facts that led him to his opinion.

## LAW GOVERNING RIGHT OF CONFRONTATION

The Sixth Amendment to the Constitution of the United States provides that " [i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him; * * *." Because this right of confrontation is a fundamental right it is made obligatory on the states by the due process clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

█ The right of confrontation means that the accused has a right to be present in the courtroom at every stage of his trial. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); *Lewis v. United States*, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1872). However, this right is not absolute and may be lost by disruptive conduct. *Illinois v. Allen, supra; see Snyder v. Massachusetts*, 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934).

Whether petitioner was denied his right of confrontation or lost the right by his conduct must be measured by the standards established by the United States Supreme Court in *Illinois v. Allen, supra*. The facts in *Allen* are important and are set out, *id.*, 397 U.S. at 339–41, 90 S.Ct. at 1059–60, as follows:

The facts surrounding Allen's expulsion from the courtroom are set out in the Court of Appeals' opinion sustaining Allen's contention:

"After his indictment and during the pretrial-stage, the petitioner [Allen] refused court-appointed counsel and indicated to the trial court on several occasions that he wished to conduct his own defense. After considerable argument by the petitioner, the trial judge told him, 'I'll let you be your own lawyer, but I'll ask Mr. Kelly [court-appointed counsel] [to] sit in and protect the record for you, insofar as possible.'

"The trial began on September 9, 1957. After the State's Attorney had accepted the first four jurors following their voir dire examination, the petitioner began examining the first juror and continued at great length. Finally, the trial judge interrupted the petitioner, requesting him to confine his questions solely to matters relating to the prospective juror's qualifications. At that point, the petitioner started to argue with the judge in a most abusive and disrespectful manner. At last, and seemingly in desperation, the judge asked appointed counsel to proceed with the examination of the jurors. The petitioner continued to talk, proclaiming that the appointed attorney was not going to act as his lawyer. He terminated his remarks by saying, 'When I go out for lunchtime, you're [the judge] going to be a corpse here.' At that point he tore the file which his attorney had and threw the papers on the floor. The trial judge thereupon stated to the petitioner, 'One more outbreak of that sort and I'll remove you from the courtroom.' This warning had no effect on the petitioner. He continued to talk back to the judge, saying, 'There's not going to be no trial, either. I'm going to sit here and you're going to talk and you can bring your shackles out and straight jacket and put them on me and tape my mouth, but it will do no good because there's not going to be no trial.' After more abusive remarks by the petitioner, the trial judge ordered the trial to proceed in the petitioner's absence. The petitioner was removed from the courtroom. The voir dire examination then continued and the jury was selected in the absence of the petitioner.

"After a noon recess and before the jury was brought into the courtroom, the petitioner, appearing before the judge, complained about the fairness of

the trial and his appointed attorney. He also said he wanted to be present in the court during his trial. In reply, the judge said that the petitioner would be permitted to remain in the courtroom if he 'behaved [himself] and [did] not interfere with the introduction of the case.' The jury was brought in and seated. Counsel for the petitioner then moved to exclude the witnesses from the courtroom. The [petitioner] protested this effort on the part of his attorney, saying: 'There is going to be no proceeding. I'm going to start talking and I'm going to keep on talking all through the trial. There's not going to be no trial like this. I want my sister and my friends here in court to testify for me.' The trial judge thereupon ordered the petitioner removed from the courtroom." 413 F.2d, at 233–234.

After this second removal, Allen remained out of the courtroom during the presentation of the State's case-in-chief, except that he was brought in on several occasions for purposes of identification. During one of these latter appearances, Allen responded to one of the judge's questions with vile and abusive language. After the prosecution's case had been presented, the trial judge reiterated his promise to Allen that he could return to the courtroom whenever he agreed to conduct himself properly. Allen gave some assurances of proper conduct and was permitted to be present through the remainder of the trial, principally his defense, which was conducted by his appointed counsel.

The Court, reversing the decision of the United States Court of Appeals for the Seventh Circuit, *United States ex rel. Allen v. Illinois*, 413 F.2d 232 (7th Cir. 1969), held that the trial judge did not commit legal error in excluding Allen from the courtroom. The Court made the following instructive observations:

Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, *Johnson v. Zerbst*, 304 U.S. 458, 464[, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938), we explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court *that his trial cannot be carried on with him in the courtroom.* Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

*Illinois v. Allen, supra*, 397 U.S. at 343, 90 S.Ct. at 1060 (emphasis supplied).

Allen's behavior was clearly of such an *extreme and aggravated nature* as to justify either his removal from the courtroom or his total physical restraint. Prior to his removal he was repeatedly warned by the trial judge that he would be removed from the courtroom if he persisted in his unruly conduct, and * * the record demonstrates that Allen would not have been at all dissuaded by the trial judge's use of his criminal contempt powers. Allen was constantly informed that he could return to the trial when he would agree to conduct himself in an orderly manner. Under these circumstances we hold that Allen lost his right guaranteed by the Sixth and Fourteenth Amendments to be present throughout his trial.

*Id.* at 346, 90 S.Ct. at 1062 (emphasis supplied).

We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.

*Id.* at 343–44, 90 S.Ct. at 1061

After discussing various disadvantages in binding and gagging an obstreperous defendant, the Court stated: "However, in some situations which we need not attempt to foresee, binding and gagging might pos-

sibly be the fairest and most reasonable way to handle a defendant who acts as Allen did here." *Id.* at 344, 90 S.Ct. at 1061

After discussing some disadvantages in citing a disruptive defendant for contempt, the Court stated: "Nevertheless, the contempt remedy should be borne in mind by a judge in the circumstances of this case." *Id.* at 345, 90 S.Ct. at 1062

■ It has been observed that the *Allen* standard "announces no *per se* rule of excludable conduct." *Badger v. Cardwell*, 587 F.2d 968, 971 (9th Cir. 1978). I agree. However, *Allen* does establish that a defendant in a criminal case cannot constitutionally be removed from the courtroom during his trial unless his "behavior was clearly of such an extreme and aggravated nature," *see Illinois v. Allen, supra,* 397 U.S. at 346, 90 S.Ct. at 1062, that it "constituted sufficient grounds for concluding that the trial could not have proceeded fairly and efficiently so long as [the defendant] was present in the courtroom." *Badger v. Cardwell, supra,* 587 F.2d at 973. *Allen* also requires that fair warning of the consequences of continued misbehavior must be given, and if the defendant is removed he must be given assurances that he may return as soon as he agrees to conduct himself in an orderly manner. *Illinois v. Allen, supra,* 397 U.S. at 343, 90 S.Ct. at 1060–1061; *Badger v. Cardwell, supra,* 587 F.2d at 973.

■ In matters such as this, discretion attends the trial judge and great deference must be accorded to his decision. *Illinois v. Allen, supra,* 397 U.S. at 343, 90 S.Ct. at 1060–1061; *Badger v. Cardwell, supra,* 587 F.2d at 973. Nevertheless, it is this court's obligation to grant petitioner the writ of habeas corpus he seeks if the record fails to sustain the constitutionality of petitioner's exclusion from a portion of his trial. *Id.*

■ The record does not sustain the constitutionality of petitioner's exclusion from a portion of his trial. Petitioner's outburst was no doubt disruptive at the moment it occurred, but I find nothing in the record sufficient to conclude that petitioner was opposed to the trial going on or that he intended to keep disrupting it so as to make it impossible to carry on the trial with him in the courtroom. *See Illinois v. Allen, supra,* 397 U.S. at 343, 90 S.Ct. at 1060–1061; *Badger v. Cardwell, supra,* 587 F.2d at 975. The very fact that petitioner had gone through seven days of the trial without interfering with its progress is strong evidence that he was not opposed to the trial process. *See Badger v. Cardwell, supra,* 587 F.2d at 975, and compare to the facts in *Illinois v. Allen, supra,* where the defendant disrupted the trial at the beginning and declared: "There's not going to be no trial, either. I'm going to sit here and you're going to talk and you can bring your shackles out and straight jacket and put them on me and tape my mouth, but it will do no good because there's not going to be no trial," and "There is going to be no proceeding. I'm going to start talking and I'm going to keep on talking all through the trial. There's not going to be no trial like this."

Furthermore, the single warning given to petitioner by the trial judge does not appear from the record to have been a fair warning. The warning was given in the midst of a brief verbal exchange between the judge and the petitioner during petitioner's outburst. The apparent rapidity with which the words were exchanged and the fact that the sheriff and deputy sheriff apparently began removing defendant in the midst of this exchange without any instruction from the judge to do so lead me to conclude that petitioner did not have the benefit of a full and fair warning, a concept which necessarily involves time to adequately reflect upon the possible consequences. In reaching this conclusion of lack of fair warning I am especially mindful of the fact that the petitioner was in some measure a mentally disturbed person, a fact conceded by counsel for respondent in oral argument. *See Illinois v. Allen, supra,* 397 U.S. at 351–52, 90 S.Ct. at 1064–1065 (Douglas, J., concurring).

Furthermore, petitioner was not given an assurance by the trial judge that he could return to the courtroom when he would

agree to conduct himself in an orderly manner. *See Illinois v. Allen, supra,* 397 U.S. at 343, 346, 90 S.Ct. at 1060–1061, 1062; *Badger v. Cardwell, supra,* 587 F.2d at 973.

As respondent readily concedes and as the Iowa Supreme Court found, *State v. Moore, supra,* 276 N.W.2d at 440, petitioner's conduct was not as flagrant as that involved in *Allen.* Nevertheless, it does not appear from the record in this case that the judge considered any means of dealing with the problem other than expulsion of the petitioner. He apparently did not consider contempt or gagging. More importantly, the judge made no effort to thoroughly explain to petitioner the need for decorum and the necessity of removing him if he continued to disrupt the trial, and he gave petitioner no time to calm down and meaningfully absorb the warning and make a deliberate and reasoned choice. "Where constitutional rights of the accused are at stake, including the right to be present, a trial court must look for corrective measures that do least injury to these rights consistent with the preservation of an orderly court atmosphere." *Badger v. Cardwell, supra,* 587 F.2d at 975.

I am led to the conclusion that petitioner did not lose his right to be present during the examination of Dr. Loeffelholz and that his exclusion from the courtroom was a violation of his right of confrontation as guaranteed to him by the Sixth and Fourteenth Amendments to the Constitution of the United States.

### NOT HARMLESS ERROR

The respondent urges that any error in excluding petitioner from the courtroom was harmless beyond a reasonable doubt and that therefore the writ of habeas corpus sought by petitioner should not be issued.

"The burden of proving harmless error is a heavy one and the state must so prove beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)." *Blackwell v. Brewer,* 562 F.2d 596, 600 (8th Cir. 1977).

At petitioner's trial, the state had the burden of proving beyond a reasonable doubt that petitioner was not insane under the M'Naghten rule. *See* footnote 1, *supra.* It was during petitioner's exclusion from the courtroom that the principal witness for the state on the insanity issue, Dr. Loeffelholz, expressed his opinion that petitioner was sane under the M'Naghten rule and testified to some of the underlying facts which led him to that opinion. Thus, the testimony of Dr. Loeffelholz that was given during petitioner's exclusion from the courtroom went to the very heart of the murder case. *See Badger v. Cardwell, supra,* 587 F.2d at 977.

"Most believe that in some undefined but real way recollection, veracity and communication are influenced by face-to-face challenge." *United States v. Benfield,* 593 F.2d 815, 821 (8th Cir. 1979). More importantly, the right of confrontation provides the defendant in a criminal case with the opportunity to listen to the testimony of an opposing witness and relate any factual discrepancies to his lawyer, which the lawyer can then fully explore on cross-examination. In this connection, it is noteworthy that petitioner's outburst leading to his removal was precipitated by his disagreement with some factual testimony of Dr. Loeffelholz.

I am not persuaded beyond a reasonable doubt that the error was harmless.

### ORDER FOR WRIT TO ISSUE

Accordingly, IT IS ORDERED that the petition for a writ of habeas corpus is sustained.

IT IS FURTHER ORDERED that the writ for release from custody shall not issue for a period of sixty (60) days pending an appeal or the pursuit of a new trial by the state of Iowa. In the event of the pursuit of a new trial without appeal, the writ shall not issue until judgment is made in the last court in which it is finally submitted.

IT IS FURTHER ORDERED that in the event an appeal is filed by the state of Iowa within sixty (60) days of this order, the issuance of the writ shall be stayed pending the outcome of that appeal provided the appeal is diligently prosecuted by the state of Iowa.

IT IS FURTHER ORDERED that in the event of affirmance on appeal, issuance of the writ shall be stayed an additional sixty (60) days to permit the pursuit of a new trial by the state of Iowa, and in the event of the pursuit of a new trial after appeal, the writ shall not issue until judgment is made in the last court in which it is finally submitted.