**David SCURR and The Attorney General of the State of Iowa, Appellants,**

**v.**

**Richard A. MOORE, Appellee.**

**No. 80–1917.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1981.

Decided May 8, 1981.

Thomas J. Miller, Atty. Gen., Thomas D. McGrane, Asst. Atty. Gen. (argued), Des Moines, Iowa, Steven M. Foritano, Legal Intern, for appellants.

Bradley McCall (argued), Dennis F. Chalupa, Newton, Iowa, for appellee.

Before LAY, Chief Judge, and STEPHENSON and ARNOLD, Circuit Judges.

STEPHENSON, Circuit Judge.

Petitioner Richard A. Moore, an inmate at the Iowa State Penitentiary in Fort Madison, contends that his exclusion from the courtroom during part of his criminal trial deprived him of his right of confrontation guaranteed by the Sixth and Fourteenth Amendments. Moore's writ of habeas corpus, brought under 28 U.S.C. § 2254, was sustained by the district court.[1] *Moore v. Scurr*, 494 F.Supp. 1042 (S.D.Iowa 1980). We reverse.

Moore was convicted of first degree murder in February 1977, for the slaying of his wife, Terri Williams Moore. His conviction was affirmed by the Iowa Supreme Court, *State v. Moore*, 276 N.W.2d 437 (Iowa 1979); which, among other issues, considered the precise question raised in this habeas petition.

## I. BACKGROUND

Moore was charged with the murder of his wife in June 1976. He was initially sent to the Iowa Security Medical Facility at Oakdale, Iowa, for psychiatric testing. Following this evaluation, a staff psychiatrist from the Oakdale facility reported to the court that defendant Moore was competent to participate in judicial proceedings.

Jury selection in the murder trial began on February 1, 1977. On the next day, out of the presence of the jury, Moore confessed to the murder and attempted to plead guilty. The state district court ordered a

competency trial pursuant to Iowa Code § 783.1 *et seq.* (1977),[2] which began the following day. After testimony by Moore, two psychiatrists and a psychologist from the Oakdale facility, and other witnesses, the jury in the Chapter 783 proceeding found that Moore was sane and competent to stand trial. Following this verdict, Moore withdrew his guilty plea. The murder trial resumed on February 8.

On February 16, the fifth day of trial, defendant Moore assaulted a jailer during the noon recess. The record discloses that the jailer suffered "brutal facial injuries" which required hospital treatment. That afternoon, the state requested that Moore be restrained during the remainder of the trial. The prosecution noted that Moore had assaulted persons at the Oakdale facility, that because of his violent outbursts and fighting he had been separated from the rest of the hospital population at Oakdale, and that one of the doctors there had described Moore as an "extremely dangerous person who enlisted the help of other patients * * * to escape."

The trial court ordered that the defendant be restrained by a body belt and handcuffs which were placed inside the defendant's coat so that they could not be seen by the members of the jury.

The preceding information furnishes a background to the verbal in-court outbursts by defendant Moore which led directly to his removal. On February 18, the seventh day of the nine day trial, the prosecution was examining Dr. Paul Loeffelholz, clinical director of the Oakdale facility. Dr. Loeffelholz was the state's principal witness concerning the insanity question which was the primary issue of the trial. *See Moore v. Scurr, supra,* 494 F.Supp. at 1043–44.

During the state's examination of Dr. Loeffelholz, the following exchange occurred:

---

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, presiding.

2. Chapter 783 was repealed as part of Iowa's criminal code revision which became effective

January 1, 1978. This subject is now covered by Iowa Code §§ 812.3–.5 (1981). *See* Note, Mental Ability of Accused to Stand Trial, 60 Iowa L.Rev. 586, 589 (1975).

Q. What, if any, was Richard Moore's response when he was told that you didn't believe him?

A. He became somewhat glum when he got those messages, irritable, demanding and made threats, and within a short time was demanding his discharge and if he wouldn't get discharged he would take a hostage and leave.

THE DEFENDANT: You're a liar.

A. With that, it was necessary that we exercise some control over a potential escape and Mr. Moore was placed in segregation pending his discharge. He was loud and obstreperous, demanding, verbally beligerent, abusive, and striking on the doors, was asked to terminate that and did not do so. He was advised to terminate it, otherwise we would have to restrain him so that he wouldn't potentially hurt himself by striking on things. He did not stop and accordingly we made an effort to subdue that striking to prevent abuse or destruction of property, and it took five adult men to subdue him, and Mr. Moore was discharged from that hospital after that scene.

Q. Did Mr. Moore subsequently return to Oakdale Facility?

A. He did. He was brought out of the hospital then from June 30, 1976.

MR. CHALUPA: Your, Honor, may we have a recess at this time?

THE DEFENDANT: I think—take this Court and shove it.

THE COURT: Members of the Jury, we will be at recess until further notice.

The court recessed for thirty-five minutes. Questioning began again and the transcript shows the following occurred:

Q. Doctor, from the background I've given you earlier, in your testimony Mr. Moore has stated on repeated occasions that he works for the Denver Police Department and these—

THE DEFENDANT: Martin down there, Lieutenant Callig down there, too.

THE COURT: Mr. Moore, will you please remain silent. We will maintain order during—

THE DEFENDANT: This ain't a Court.

THE COURT: —of this trial.

THE DEFENDANT: This is bullshit.

THE COURT: If you continue with your outbursts, you will be removed from this Court room.

THE DEFENDANT: Remove me. Big deal. I ain't interested in your Court room, flying your bombs and your bullshit. You want to bomb, you bomb it yourselves—

THE COURT: May the record show that the Defendant—

THE DEFENDANT: —or being your funky President.

THE COURT: —has been removed from the Court room by the Sheriff and the Deputy Sheriff. This trial will continue without the presence of the Defendant being present.

After the defendant was removed, the examination of Dr. Loeffelholz continued. After about twenty to thirty minutes of testimony, a short recess was taken. Following this recess, the defendant returned to the courtroom and remained there throughout the rest of the trial without incident. The testimony of Dr. Loeffelholz continued after the recess.

The state trial court denied Moore's motion for new trial based upon his exclusion from the courtroom. The Iowa Supreme Court, as noted, affirmed the conviction.

## II. DISCUSSION

■ The removal of a disruptive defendant from the courtroom must be measured by the standards set forth in *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). *Allen* stated that a defendant's Sixth Amendment right to confrontation assures the accused the right to be present in the courtroom at every stage of the trial. *Id.* at 338, 90 S.Ct. at 1058. The Court held, however, that this right can be forfeited by contumacious conduct. *Id.* at 343, 90 S.Ct. at 1060–1061; *United States*

*v. Cochran,* 475 F.2d 1080, 1083 (8th Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). *See Badger v. Cardwell,* 587 F.2d 968, 970–71 (9th Cir. 1978); *Bibbs v. Wyrick,* 526 F.2d 226, 227 (8th Cir. 1975), *cert. denied,* 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976). *See also* Fed.R.Crim. Pro., Rule 43(b)(2) (1975 amendment incorporating *Illinois v. Allen* principle).

In *Allen* the accused insisted on defending himself and during the voir dire examination "started to argue with the judge in a most abusive and disrespectful manner." The judge instructed appointed counsel to handle the remainder of the voir dire. Defendant Allen continued to disrupt the proceedings. He ended his remarks by threatening the judge, tearing his attorney's file and throwing the papers to the floor. The trial judge then said, "One more outbreak of that sort and I'll remove you from the courtroom." The defendant did not heed this warning and continued to make abusive statements. Allen was then removed from the courtroom upon the trial court's order. The jury was then selected without the defendant being present. *Illinois v. Allen, supra,* 397 U.S. at 339–40, 90 S.Ct. at 1058–1059.

The state judge allowed Allen to return to the courtroom for the trial upon the condition that he would behave and not interfere with the introduction of evidence. Only minutes later, the defendant again interrupted the proceedings and promised to continue to do so. The trial judge then, for the second time, ordered that Allen be removed from the courtroom. Allen remained out of the courtroom during the presentation of the state's case-in-chief except for several brief appearances to be identified. At the close of the state's case, the trial court again allowed Allen to return on his assurance that he would conduct himself properly. Allen was permitted to stay in the courtroom for the remainder of the trial. *Illinois v. Allen, supra,* 397 U.S. at 341, 90 S.Ct. at 1059–1060.

Faced with these facts, the Supreme Court observed that the right to confrontation was not absolute. And while noting that courts must indulge every reasonable presumption against the loss of a constitutional right, Justice Black, writing for a virtually unanimous court, stated:

> [W]e explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

*Id.* at 343, 90 S.Ct. at 1060–1061 (footnote omitted).

Applying *Allen* to the case at bar, the district court held that Moore's conduct was not as flagrant as that of the defendant in *Allen* and that it found "nothing in the record sufficient to conclude that petitioner was opposed to the trial going on or that he intended to keep disrupting it so as to make it impossible to carry on the trial with [Moore] in the courtroom." *Moore v. Scurr, supra,* 494 F.Supp. at 1047–48. The district court concluded that the single warning given by the state trial judge was not a full and fair warning. The district court also noted that the state judge did not give the defendant an assurance that he could return to the courtroom when he agreed to conduct himself properly, that the state judge apparently did not consider other responses such as *gagging* or contempt, that the state judge did not thoroughly explain the need for decorum or give the defendant time to calm down and meaningfully absorb the warning.[3]  *Id.*

---

**3.** The district court also held that Moore's exclusion from the courtroom was not harmless error beyond a reasonable doubt. *Moore v.*

*Scurr,* 494 F.Supp. 1042, 1048 (S.D.Iowa 1980). Because of our resolution of this appeal, we need not discuss this issue.

■ We disagree with the conclusions of the district court. As the district court recognized, *Illinois v. Allen* states that the management of the courtroom is subject to the trial court's discretion and great deference must be accorded its decision. *Illinois v. Allen, supra*, 397 U.S. at 343, 90 S.Ct. at 1060–1061. We hold that Moore's brief exclusion from the courtroom following the disruptive outbursts was within the discretion of the state trial court. Removal should be limited to cases urgently demanding that action, but the balancing of the defendant's confrontation right with the need for the proper administration of justice is a task uniquely suited to the trial judge. Sufficient discretion must be granted to meet the circumstances of each case.

While Moore's conduct may not have been as flagrant as that of Allen, it certainly was sufficient to require a response from the state judge. Further, Moore's conduct was arguably more disruptive than that involved in *United States v. Cochran, supra*, 475 F.2d at 1083. However, we need not categorize Moore's conduct except to determine that it violated the dignity, order and decorum of court proceedings which *Illinois v. Allen* empowered judges to protect. The state judge in this case was faced with a disruptive and dangerous defendant who openly flouted the court's authority to remove him.[4]

■ The warning in this case was similar in timing and content to the one used by the trial court in *Allen* just prior to the first removal. Both occurred in the middle of a heated exchange between the court and defendant. We agree with the Iowa Supreme Court that no "formalistic sequence of warnings" is required. *State v. Moore, supra*, 276 N.W.2d at 440. Nor is it necessary

for more than one warning to be given, only one was given by the judge in *Allen* prior to the first removal. *Illinois v. Allen, supra*, 397 U.S. at 340, 90 S.Ct. at 1059. Further, it is clear from Moore's response—"Remove me. Big deal."—that he heard and understood the court's warning. The defendant here made it abundantly clear that he would not abide by the court's order.

■ In deciding that the warning was insufficient, the district court placed emphasis on the conclusion that the defendant "was in some measure a mentally disturbed person." *Moore v. Scurr, supra*, 494 F.Supp. at 1047. Again, we agree with the Iowa Supreme Court. A jury had determined that Moore had the mental capacity to appreciate the charge against him, understand the proceedings and help conduct his defense. Thus, he was capable of effecting a valid waiver of his Sixth Amendment right of confrontation. *State v. Moore, supra*, 276 N.W.2d at 441. There was no evidence, based on our reading of the record, that should have suggested to the trial judge that the defendant's status had changed since the Chapter 783 (mental competency) proceeding.

■ The district court also finds fault in that the state trial judge did not give Moore, at the time of his removal, an assurance that he could return to the courtroom if he behaved properly. We agree such a procedure is desirable, but *Illinois v. Allen* makes no such absolute requirement. The *Allen* Court stated only that once the confrontation right is lost it can be reclaimed as soon as the defendant is willing to conform his behavior consistent to the decorum required in judicial proceedings. *Illinois v. Allen, supra*, 397 U.S. at 343, 90 S.Ct. at 1060–1061.[5] Moore was excluded from the

4. Moore argues that his out-of-court conduct—the assault on the jailer and his actions at the Oakdale facility—can not be relied upon to exclude him from the courtroom. We agree that to rely exclusively on out-of-court conduct would be improper. However, when such conduct is coupled with openly disruptive behavior *in* the courtroom, the out-of-court actions are part of the "totality of the circumstances" that the trial judge may consider in exercising its

discretion. *Cf. State v. Okumura*, 570 P.2d 848 (Hawaii 1978) (escape attempt during a recess was not sufficient to amount to a waiver of right to confrontation under *Illinois v. Allen* when there was no disruptive conduct in the courtroom).

5. The ABA Project on Standards for Criminal Justice suggests that once removed the defendant should be returned to the courtroom at the commencement of each trial day, or more of-

 

courtroom for only a brief period and returned following the next recess. We think this procedure is eminently consistent with the language and the spirit of *Illinois v. Allen.*

The trial judge's apparent failure to consider other means of dealing with Moore is likewise insufficient grounds to sustain the writ. Although a number of methods are available, it is for the trial judge to decide. *See* ABA Project on Standards for Criminal Justice, The Function of the Trial Judge, § 6.8 at 88–90 (Approved Draft, 1972). We will provide relief only upon a showing of an abuse of discretion.

We note that our decision in this case is not changed by the recent Supreme Court case of *Sumner v. Mata,* —— U.S. ——, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). *Sumner,* which was handed down after the district court issued its opinion in the case at bar, held that federal courts should apply the presumption of correctness which is mandated by section 2254 to the factual determinations made by the state courts. *Sumner v. Mata, supra,* 101 S.Ct. at 769. The Court also held that a district court which sustains a writ under section 2254 should include in its opinion the reasoning which led it to conclude that any of the first seven factors listed in section 2254(d) were present or the reasoning which led it to conclude that section 2254(d)(8) was applicable. *Sumner v. Mata, supra,* 101 S.Ct. at 771. The district court in this case did not refer to section 2254(d). However, it did set out its reasons for holding that the state court abused its discretion in excluding the petitioner from the courtroom. The instant case concerns a question of law or at least a mixed question of law and fact.

The Iowa Supreme Court affirmed the district court after a review of the entire record and a careful analysis of the applicable law. We agree with the Iowa Supreme Court that the state trial court did not

abuse its discretion in excluding Moore from the courtroom.

Reversed.

---

ten. The trial judge could then, in open court and on the record, offer the defendant the opportunity to return to the courtroom conditioned upon his assurance of good behavior.

ABA Project on Standards for Criminal Justice, The Function of the Trial Judge, § 68 at 88–89 (commentary) (Approved Draft, 1972).