Lee GOSTON *v.* STATE of Arkansas

CR 96-1200                                    939 S.W.2d 818

Supreme Court of Arkansas
Opinion delivered March 3, 1997

*Rice, Adams & Pace, P.A.*, by: *Kelly M. Pace*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly K. Hill*, Deputy Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. At issue in this case is whether the trial court abused its discretion in excluding the appellant, Lee Goston, from his trial. Prior to his trial for second-degree battery, the trial court excluded Goston from trial because of recent incidents of disruptive behavior. Goston appealed and argued that the trial court wrongfully excluded him from trial.

The court of appeals reversed the conviction, and remanded the case for a new trial. *Goston v. State*, 55 Ark. App. 1, 930 S.W.2d 384 (1996). We granted a petition for review. Upon granting a petition for review from a decision of the court of appeals, we review the case as if the appeal was originally filed in this court. *Armer v. State*, 326 Ark. 7, 929 S.W.2d 705 (1996); *Maloy v. Stuttgart Memorial Hosp.*, 316 Ark. 447, 872 S.W.2d 401 (1994). We conclude that the trial court abused its discretion in excluding Goston from his trial, and reverse and remand for a new trial.

Goston's abstract reveals the following sequence of events leading up to his exclusion. On June 6, 1995, Goston was set to be tried on a second-degree-battery charge. Prior to trial that day, Goston's counsel informed Goston that he was not going to be allowed to be present during trial. Goston then explained to the trial court that "I have got all of my membranes and I am all right, I am capable of sitting in there and conducting myself like a proper young man. I would like to assist my counsel in interrogating the witnesses."

Goston also indicated that he was dissatisfied with defense counsel, and that he knew more about the case than counsel did. Defense counsel replied that he had been unable to discuss the case with his client, because he had refused to talk to him when he visited him in the jail. Defense counsel told the trial court that he had a good idea of the witnesses' testimony, and that he had made a previous court appearance where Goston refused to walk on his own and had to be carried out of the courtroom. Defense counsel also described an incident in another case where Goston was disruptive in front of the jury panel. In his opinion, Goston would be better off excluded from trial; the prosecuting attorney agreed.

Goston then replied that he was not violent and posed no threat to the jury. He said that his prior incidents stemmed from drug-induced hallucinations. The trial court then told Goston that he "had never seen anybody in court like you were the last two times." Goston again maintained that he had been under the influence of drugs in the past, and emphasized that his prior disruptive behavior occurred in April or May. He then moved to dismiss the charges based on a speedy-trial violation, which the trial court denied. When Goston again said that he would like to assist his attorney at trial, the trial court replied, "That will be denied because of the way you acted here in this courtroom the last two times you have been here. You have shown the propensity to make it necessary for you to stay out of the courtroom during this trial."

Goston then noted that he had been speaking in a reasonable tone and a respectful manner, but the trial court recollected the last time Goston had been in court and had his shackles taken off,

"[y]ou still acted up and after giving me your word, Mr. Goston. So I can't believe you." Goston conceded that he cursed at members of the jury panel, but said that he never hit anybody. He again said that he was not violent and wished to assist his counsel, and that he would "use my senses, my better sense of judgment. . . I am asking you with the utmost respect for your authority."

Defense counsel then added that he felt uncomfortable sitting next to Goston unless he was shackled, given his prior statements that he desired to strike past counsel. However, he also opined that shackling Goston in front of the jury would not help his cause, and the trial court agreed.

Goston then moved to fire defense counsel because he "didn't trust him." He said that if he had to, he would rather ask questions himself while in shackles. The trial court denied Goston's motion to proceed *pro se*. Goston repeated that he posed no threat to the jury or any others in the courtroom, and then the trial court had Goston removed from the courtroom for the duration of his trial. The jury ultimately convicted Goston and sentenced him to six years' imprisonment.

On appeal, Goston argues that the trial court erred in excluding him from trial in violation of his constitutional right to be present and to confront witnesses. We review the trial court's determination for an abuse of discretion. *See Stanley v. State*, 324 Ark. 310, 920 S.W.2d 835 (1996).

■ Article 2, Section 10, of the Arkansas Constitution and the Sixth Amendment of the United States Constitution guarantee an accused the right to confront witnesses against him. This right encompasses the basic right of a criminal defendant to be present in the courtroom at every stage of the trial. *See Lewis v. United States*, 146 U.S. 370 (1892). However, the United States Supreme Court has held that the right may be forfeited when the accused behaves in a disruptive manner that makes it difficult to carry on the trial. *Illinois v. Allen*, 398 U.S. 915 (1970).

In *Allen* the trial court repeatedly warned the defendant that he would be removed from the courtroom if he persisted in his disorderly conduct. Ultimately the defendant was removed, but

the trial court reiterated that he could return whenever he agreed to conduct himself properly. The defendant eventually gave some assurances of proper behavior, and was allowed to return to trial.

On habeas review, the *Allen* Court concluded that the defendant forfeited his right to be present because of his behavior. The Court observed that judges confronted with disruptive behavior must have discretion to meet the circumstances of each case, and that "no one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Id*. The Court additionally added that the right to be present may be reclaimed as soon as the defendant indicates willingness to conduct himself in a respectful manner consistent with the decorum of the courtroom. The Court suggested that there were at least three constitutionally permissible ways to handle the "obstreperous defendant":

(1) bind and gag him, thereby keeping him present;
(2) cite him for contempt;
(3) take him out of the courtroom until he promises to conduct himself properly.

*Id*. The Court concluded that removing the defendant was not the only constitutional method of dealing with him, but that the trial court did not commit legal error in the manner it dealt with the defendant.

A similar situation was presented to this court in *Terry v. State*, 303 Ark. 270, 796 S.W.2d 332 (1990), where the trial court removed the defendant from the courtroom after disruptive behavior. This court held that the defendant forfeited his right to be present through his own actions. While the trial court did not specifically warn the defendant that he would be removed from the courtroom before he was actually removed, the trial court "went to appellant's cell to try to convince him to return to the courtroom without being opprobrious, warned appellant that the trial court would proceed with or without him, and informed him that he could return at any time as long as he did so without contumacy." *Id*.

In the present case, the State argues that the trial court's detailed knowledge of Goston's past behavior was a sufficient fac-

tual basis for Goston's exclusion. We agree that the trial court's knowledge of a defendant's past behavior is a relevant consideration in the trial court's exercise of discretion under *Illinois v. Allen*.

For example, in *United States v. Munn*, 507 F.2d 563 (10th Cir. 1974), *cert. denied*, 421 U.S. 968 (1975), the Tenth Circuit affirmed the trial court's brief exclusion of the appellant from his trial for robbery. In *Munn* the appellant had physically assaulted his past lawyers, including the one who ultimately represented him at trial. A few weeks prior to trial during a pretrial hearing, the appellant threatened the trial court with violence, after which the court warned the appellant that he would be removed to a room where he could hear the proceedings if he acted improperly at trial.

At trial, the appellant used extremely abusive language and created a disturbance in the courtroom as jury selection was about to begin. The trial court then ordered the appellant into an office where he could hear the proceedings, and he was also advised that he could confer with counsel from time to time while he was absent. The appellant was absent from the courtroom for an hour and fifteen minutes, and he was allowed to return for the remainder of the trial after a promise to behave.

The *Munn* court rejected the appellant's contention that a contemporaneous warning of exclusion was required, noting that he had been warned during his prior tirade weeks earlier. Moreover, the appellant was able to hear the proceedings during his short exclusion from the courtroom.

The Tenth Circuit was also unpersuaded by the appellant's argument that he was not allowed to return soon enough after he agreed to change his behavior. The court noted that *Illinois v. Allen* contained "no absolute mandate dictating the return of every defendant who has been removed from the courtroom simply on his verbal promise to reform." *Id.* The court further recognized the value of prior conduct in assessing such a promise, and that the trial court should be given discretion to evaluate the sincerity of a recantation. Under the particular circumstances presented, the *Munn* court could not conclude that the trial court

abused its discretion in failing to immediately return the appellant to trial after his promise to behave.

The defendant's past behavior was also a valid consideration in *Scurr v. Moore*, 647 F.2d 854 (8th Cir. 1981), *cert. denied*, 454 U.S. 1098 (1981), where the district court sustained the defendant's habeas writ on the basis that his exclusion from his state court murder trial deprived him of his constitutional right of confrontation. On habeas review the Eight Circuit reversed, holding that the defendant's confrontation rights were not violated. On the fifth day of his trial, the defendant brutally assaulted a jailer during a recess. The State requested that the defendant be shackled, noting that he had been subject to violent outbursts at a psychiatric facility while being evaluated some months prior to trial. The trial court entertained the request and the defendant was shackled.

On the seventh day of his trial, the defendant directed a number of disrespectful and obscene verbal outbursts at a witness and the trial court. The trial court removed the defendant, and the examination of the witness continued. After about twenty to thirty minutes of testimony, a short recess was taken after which the defendant was allowed to return to the courtroom without incident.

The Eighth Circuit held that the trial court properly considered the defendant's past out-of-court conduct in exercising its discretion. The *Scurr* court also held that the trial court's failure to inform the defendant that he could return upon proper assurances was not error, even though such a procedure was "desirable." *Id.* Given that the defendant was only excluded for a brief period of time and returned following a recess, the court concluded that the trial court's procedure was consistent with *Illinois v. Allen.*

Unlike the defendants in *Munn, supra,* and *Scurr, supra,* Goston was never given the opportunity to return to trial. The record suggests that he was excluded for the duration of the trial, and there is no indication that he was placed where he could listen or otherwise observe the proceedings or consult with counsel. Moreover, his behavior on the day of trial did not appear to be disruptive; rather, the abstract suggests that Goston acted in a calm and respectful manner.

■ Obviously, the trial court was unconvinced by Goston's repeated assurances that he could maintain appropriate behavior during the course of the trial. Moreover, we recognize that the trial court is in a superior position to evaluate Goston's sincerity on this issue. In fact, Goston had already broken a prior promise of good behavior to the trial court.

Nonetheless, Goston was never afforded *any* opportunity to reclaim his right of confrontation. The trial court based its ruling on prior incidents that occurred within the past sixty days, and gave Goston no chance to conduct himself in an appropriate manner in the present case.

We note that in condoning the removal of the defendant in *Illinois v. Allen,* the Supreme Court seemed to place great weight on the fact that the trial court reiterated to the defendant that he could return to trial when he agreed to conduct himself properly. Likewise, this court emphasized the same thing in *Terry,* observing that the trial court explained to the defendant that he could return if "he did so without contumacy."

■ In the present case, Goston assured the trial court that he would behave during the trial and indicated a desire to aid defense counsel. Goston had not engaged in disruptive behavior during the pretrial hearing on June 6, 1995. Nor was Goston informed that he had permanently forfeited his right of confrontation, subject to no reclamation. Instead, he was removed for the entire length of his trial and was never given the opportunity to return. Under these circumstances, we conclude that the trial court abused its discretion in removing him.

We are aware of no case where a defendant was permissibly excluded from his entire trial, without being informed of the trial's progress or afforded an opportunity to return, based solely on his prior conduct in other matters. While the minority characterizes Goston's conduct at the pretrial hearing as insolent and disruptive, the trial court had already made the determination to exclude Goston before the pretrial hearing. Moreover, the trial court never indicated that Goston was presently behaving in a contemptuous manner.

Reversed and remanded.

ARNOLD, C.J., GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Justice, dissenting. How many times may a defendant misbehave at his or her jury trial before a trial judge may remove the defendant from the courtroom? How many times must a trial judge accept a defendant's false promises that he or she will not disrupt trial proceedings before the trial judge has the discretion to no longer believe the defendant's assertions? Where a defendant has evidenced past violent behavior, and on the day of trial states that he might get violent, is this conduct sufficient to permit the trial judge to exclude the defendant from the courtroom? In my view, Goston's repeated, false promises and disruptive and violent behavior were clearly sufficient to allow the trial judge to remove Goston from his jury trial.

The majority opinion correctly discusses the governing case law in considering a trial judge's alternatives when confronted with a disruptive, misbehaving defendant, but it glosses over Goston's recurring misbehavior, which the trial judge relied upon in exercising his discretion to exclude Goston from the trial proceedings. Instead, the majority largely recounts Goston's assurances to the trial judge at the June 6, 1995 trial that (1) he was capable of conducting himself like a proper young man; (2) he wanted to assist his counsel during trial; and (3) he was not violent and posed no threat to anyone in the courtroom. In rejecting Goston's assurances as false promises, the trial judge listed Goston's prior actions the judge believed subverted any assurances Goston made at his June 6, 1995 trial.

In exercising his discretion to remove Goston from the courtroom on June 6, the trial judge found that, within the past sixty days, Goston had in three other trial proceedings (1) refused to walk on his own and had to be carried into the courtroom; (2) had laid on a table and refused to participate in a prior trial proceeding; (3) had cursed defense counsel during voir dire of the jury and also threatened his attorney. At the last trial proceeding before the trial judge, the judge, after being assured by Goston that he would behave, had Goston's shackles and handcuffs removed; nonetheless, Goston afterwards cursed the jury, and

caused the judge to call a mistrial and to release forty called jurors and ten witnesses. It is also significant that the trial judge had knowledge that Goston had caused another mistrial only days before, during another jury trial before a different judge. There, Goston had been belligerent, used grossly inappropriate language and profanity toward the judge, threatened to kick over a table and proclaimed, "We are going to fight up in here." *See Goston v. State*, 55 Ark. App. 17, 930 S.W.2d 800 (1996).

Goston continued his insolent and disruptive behavior at a pretrial hearing before his June 6, 1995 trial, and while the majority characterizes his actions as "calm and respectful," I leave that to you, the reader, to decide. For example, at the same time Goston was reassuring the judge at pretrial that he would conduct himself appropriately at trial, Goston exhibited disrespect and argued with the judge throughout the hearing. Goston refused to cooperate or communicate with his counsel, and tried to fire him immediately prior to trial. What better way, I ask, can a defendant disrupt or halt his proceeding? Goston further accused his counsel of falsifying records, and claimed he would not communicate with his attorney because Goston's "mind was telling [him] that all white people are devils." Goston argued with the judge, stating he was a member of a gang and ". . . the same things you think about gangs is the same thing we think about you and the police . . . ." Goston further told the judge that, while he posed no threat to the jury or any person in the court, "I might get violent in effect."

At this point, I mention the majority's suggestion that the trial judge never considered or relied on how Goston acted at his pretrial hearing when the judge ruled Goston should be excluded from the courtroom. Such a suggestion wholly ignores the record and what took place at the hearing. Obviously, the judge saw and heard first hand Goston's hostile remarks and threats, and it is sophomoric to think the judge failed to take Goston's actions and enmities into consideration when barring him from the courtroom. Even if the trial judge failed to repeat every action Goston took towards disrupting another trial, our court can readily go to the record to support why the judge ruled as he did.

From Goston's prior misbehavior and the misconduct he exhibited at the June 6 pretrial proceeding, the judge simply did not believe Goston would conduct himself appropriately at trial. Goston is no newcomer to the justice system; he had twenty criminal charges pending against him at the time of trial, and he had attended a number of hearings and trials. Ten of those charges involved violent crimes such as aggravated robbery and aggravated assault. This case, in fact, involved his having struck a police officer, causing the officer to have surgery on his nose. Based upon Goston's past and present obstreperous behavior, the trial judge had every right to disbelieve Goston's assertions that he would behave, and believe his empty promises would assuredly result in a third mistrial. Based upon Goston's own words, the trial court could have reasonably expected Goston to be violent.

In conclusion, the principle is settled that a court should vigilantly protect a defendant's constitutional rights, but it was never intended that any of these rights be used as a ploy to frustrate the orderly procedures of a court in the administration of justice. *U.S. v. Nunez*, 877 F.2d 1495 (10th Cir. 1989); *see also Scurr v. Moore*, 647 F.2d 854 (8th Cir. 1981). And while it has been stated that, once a defendant's confrontation right has been lost through misconduct, it may be regained as soon as the defendant is willing to conduct himself consistently with decorum and respect, *Illinois v. Allen*, 397 U.S. 337 (1970), such statement is not intended as an absolute mandate dictating the return of every defendant who has been removed from the courtroom simply on his verbal promise to reform. *United States v. Munn*, 507 F.2d 563 (10th Cir. 1974). As pointed out in *Munn*, prior conduct may indicate such a promise is of little value, and some discretion is still left with a trial court to pass upon the sincerity of a defendant's recantation. The *Scurr* court stated the trial court's duty in such matters in these following terms:

> Removal should be limited to cases urgently demanding that action, *but* the balancing of the defendant's confrontation right with the need for the proper administration of justice is a task uniquely suited to the trial judge. Sufficient discretion must be granted to meet the circumstances of each case. (Emphasis added.)

In the present case, the trial judge was not required to wait for Goston to act on the violence he voluntarily announced he might commit during trial. Nor was the judge required to observe Goston commit further defiant and disruptive actions in front of the jury before he could exclude Goston from the courtroom. To do so would have predictably resulted in another mistrial. Plus, considering Goston's violent history and threats, someone likely would have been injured, if the judge had failed to exclude Goston.

If Goston had truly repented of his past acts of misconduct and had shown a sincere willingness to behave at trial, the trial court would have been obliged to allow Goston to be present at trial. Instead, Goston manifested his continued contempt and hostility toward the trial court and his attorney.

In my view, the trial judge's decision to exclude Goston from the courtroom was the only reasonable choice to ensure that the orderly administration of justice could be achieved. The Sixth Amendment right of confrontation does not stand as a shield to protect the accused from his own misconduct or chicanery. *Diaz v. United States*, 223 U.S. 442 (1912); *United States v. Carlson*, 547 F.2d 1346 (1976). Accordingly, I would uphold the trial judge's rulings and affirm Goston's conviction.

In its closing paragraph, the majority opinion states that the majority is unaware of any case "where a defendant was permissibly excluded from his entire trial, without being informed of the trial's progress or afforded an opportunity to return, based solely on his prior conduct in other matters." I reiterate — Goston had already caused a mistrial in his jury trial before this judge. As has been well stated by the Eighth Circuit Court of Appeals in *Scurr*, the removal of an obstreperous defendant from the courtroom requires no "formalistic sequence of warnings," nor is it necessary for more than one warning to be given. *Scurr*, at 858. The *Scurr* court further held that, while it is desirable for a trial judge to give the defendant an assurance that he can return to the courtroom if he behaves properly, such procedure is not an absolute requirement. *Id.*

As noted above, Goston showed no remorse for his past misconduct, and instead continued his show of hatred and hostility towards the judicial process. The trial judge not only acted prudently when removing Goston from the proceedings, he likely prevented Goston from acting on his threats to commit violence against his attorney or others present in the courtroom.

ARNOLD, C.J., and CORBIN, J., join in this dissent.